FRED NEILL v. THE STATE.

No. 3523.   Decided January 24, 1906.

### 1.—Rape—Aggravated Assault—Evidence—Impeachment—General Reputation —Sur-rebuttal.

Upon a trial for rape where the State had laid a predicate to impeach defendant and during the introduction of its evidence in rebuttal to the testimony of the defendant, introduced said impeaching testimony, completely impeaching defendant's statement made on the witness stand with reference to a conversation had with said impeaching witness; it was error to thereupon refuse the defendant to prove his general reputation for truth and veracity on account of its being in sur-rebuttal.  Swain v. State, 86 S. W. Rep., 335.

### 2.—Same—Evidence—Acts of Third Party—Opium Fiend—Certificate of Judge.

On a trial for rape the fact that the mother of the prosecutrix was addicted to the opium habit could not be introduced in evidence unless it shed some legitimate light upon the guilt or innocence of defendant.  However, the certificate of the judge to defendant's bill of exceptions does not verify the statement.

### 3.—Same—Evidence—Books of Physician to Show Birth—Age of Prosecutrix.

Upon a trial for rape where proper predicate was laid, the books kept by a physician were admissible to show the birth of the prosecutrix.

### 4.—Same—Evidence—Acts and Crimes of Third Party.

Upon a trial for rape it was inadmissible to introduce testimony that a companion of defendant upon a previous occasion had been charged with seduction, the said party not being a witness in the case and was only referred to by defendant as being along upon a drinking trip the evening prior to the alleged assault together with defendant, prosecutrix and another female.

**5.—Same—Charge of Court—Aggravated Assault.**

See opinion of court for a charge on aggravated assault upon a trial for rape, which was held to be correct under the evidence.

Appeal from the District Court of Johnson. Tried below before Hon. O. L. Lockett.

Appeal from a conviction of aggravated assault; penalty, a fine of $800.

The testimony in the case is very voluminous and obscene, and the issue between the State and the defendant was narrowed down as to whether defendant used undue force or was merely attempting to have sexual intercourse with the prosecutrix with her consent. The prosecutrix testified that the defendant threw her down and choked her and attempted with the assistance of another man to have carnal intercourse with her, and that a long struggle ensued between her and them; but her testimony fails to show penetration.

On the part of the defense, acts of undue familiarity of prosecutrix with defendant and others was shown, and that on the night of the alleged occurrence, two strangers passed near by the place where the alleged rape was said to have occurred and did not see or hear anything unusual, but saw defendant's companion and another female in a surrey. Prosecuting witness admitted that she and defendant together with another man and woman were out riding that night, and that defendant attempted to ravish her on the side of the road at the very time the said strangers passed near by.

*S. C. Padelford, Odell, Phillips & Johnson,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was charged with the offense of rape, and the jury found him guilty of an aggravated assault, and his punishment was fixed at a fine of $800.

Appellant's first bill of exceptions complains of the following: While appellant was on the stand in his own behalf, the State laid the predicate to contradict the defendant by one Will Grigsby, propounding to said defendant the following question: "Is it not a fact that you met Will Grigsby there (meaning on Henderson street near Walsh's restaurant) and called him and told him you wanted to have a talk with him, and after he stopped there you told him you wanted him to see the girl (meaning prosecutrix) that you were in a lot of trouble, and if something was not done you would likely have to spend a part of your life in the State prison. To which appellant answered, 'No, sir, I never told him anything of the kind.' After the State and the defendant had closed their testimony, the State then introduced Will Grigsby and propounded to him a question embodying all of the facts for which the predicate had been laid on cross-examination of defendant as above stated, and the witness was permitted to answer,

'Yes, sir, I did.' Thus completely impeaching appellant to the extent that it could be done by one witness. After witness Will Grigsby had left the stand, appellant offered to introduce and would have proved the general reputation for truth and veracity of appellant to be good by various witnesses." The State objected to this testimony, "for the reason that the predicate for the impeachment and contradiction of the defendant was laid while defendant was upon the stand and was testifying, and before defendant had closed his case, and while the said witness was still available to defendant and present in the court-room, and for the reason that the prosecuting witness, Willie Davis in her testimony testified before defendant had testified, and that defendant had ample opportunity to bring in rebuttal testimony as against the witness, Willie Davis, and also to introduce testimony as to his general reputation, before he closed his case." The court sustained the objection, and made the following statement: "The State had introduced its testimony in the main, and rested, and defendant then introduced his testimony, including the testimony of himself, and the evidence of defendant and State's witness, Willie Davis, is as conflicting as it can be on every material issue and point, almost in the whole evidence of the two witnesses—each contradicting the statement made by the other. The State then introduced rebuttal testimony to the defendant's testimony, and during that time introduced the witness, Will Grigsby, in which he testified to a conversation with defendant that is set out in the testimony of said witness, Grigsby, and before the court had ruled on the question, the court stated to counsel for defendant that he knew of no authority by which the evidence could be introduced in rebuttal to the State's rebuttal evidence, and if the counsel could furnish the court with an authority at any time before the argument closed, the evidence would be admitted, and that the court now says that he will not close the argument in this case before six o'clock this evening—it being then about 10:30 a. m. Defendant's counsel stated to the court that if the defendant was entitled to the evidence at all he wanted it before the argument began." The statute authorizes the evidence to be introduced at any time before the close of the argument, within the sound discretion of the court. It appears from this bill that while the State had laid a predicate to impeach appellant, it had not done so by the witness Grigsby until it was introducing its evidence in rebuttal. There was no occasion for appellant to introduce testimony as to his character until there had been an effort made to impeach him. The mere fact that prosecutrix's and appellant's testimony was contradictory, one of the other, would not per se authorize appellant to introduce evidence of good character for truth and veracity. Nor would the sheer fact that the State had laid a predicate on the cross-examination of appellant per se authorize appellant to introduce evidence of good character. But the moment that the State did put a witness on the stand and impeached appellant, then appellant was authorized thereby to introduce

evidence of his general reputation for truth and veracity. A case that seems to be altogether in point is Swain v. State, 86 S. W. Rep., 335; and see also Long v. State, 17 Texas Crim. App., 128; Thomas v. State, 18 Texas Crim. App., 213. It follows, therefore, that the trial court erred in refusing to permit the introduction of this testimony as to his good character.

Appellant also objected to the State asking the prosecutrix, the following question: "Do you know whether or not she (meaning witness' mother) is addicted to the opium habit?" To which appellant objected, because it has nothing to do with this case; and over appellant's objection the court permitted the witness to answer: "She eats it some." This appears as above stated, according to the report of the stenographer. As to whether or not the evidence has anything to do with this case is not such an objection as we can pass upon. The fact that appellant states it has nothing to do with it, is not a certificate of that fact by the judge. But in view of the reversal on another ground, we would suggest that the habits of the parents of the prosecutrix could not be introduced in evidence, unless they shed some legitimate light upon the guilt or innocence of appellant. The sheer fact that prosecutrix' mother was an opium fiend would not per se authorize appellant to do prosecutrix any harm. It would be germane and proper for the State to prove the antecedents of prosecutrix; what she did, where she lived, and who her parents were. But if prosecutrix' mother was an opium fiend (and this is the only connection the record here shows) it would not be admissible per se. We could imagine circumstances under which the fact that she was in the habit of using opium might become germane, for instance, if the violence was done prosecutrix in the house where the mother was in a stupor. But we know of no rule of law that permits the introduction in evidence of the debasement of the father or mother of prosecutrix by any species or character of dissipation, as shedding any legitimate light on the State's case as presented by the record before us.

The State introduced Dr. J. R. Keating, who testified that he waited upon the mother at the time prosecutrix was born, as shown by his memorandum in medical accounts made at the time. Appellant objected on the ground "that the same was not admissible for any purpose. There is only one kind of book admissible in evidence; that is, an account book between the parties, where there is a suit between the parties connected with the account. It is hearsay testimony and improper." These objections are not tenable. We have heretofore held that books kept by a physician, where proper predicate was laid, as the record here shows, are admissible to show the birth of children. Smith v. State, 7 Texas Ct. Rep., 343.

The fifth assignment complains that while defendant was upon the stand as a witness, he testified upon direct examination that on the evening of the Sunday, before the alleged assault, he was out in a buggy with prosecutrix, and that Wright Rainey was out with Florence

Barlow in a separate buggy; and they went out east of Cleburne, and did not get home until late that evening, and that they had something to drink with them; that they had some whisky. Wright Rainey was never a witness on the stand, but was merely referred to as being out with appellant and prosecutrix and Florence Barlow on a drinking trip the Sunday evening prior to the alleged occurrence. On cross-examination the State propounded to the defendant the following question: "Wright (meaning Wright Rainey) was the fellow who was afterwards charged with seduction?" To which question defendant objected because it was immaterial and no charge was ever brought. The court permitted the question to be asked, and the State propounded the following question: "Is not Wright Rainey the fellow that was charged with seducing Sadie Cammack?" This testimony was inadmissible. Surely appellant's guilt could not be made to turn legitimately upon the fact that a companion on a previous occasion had been charged with seduction, and such testimony could merely serve to prejudice the minds of the jury.

The fifth ground of appellant's motion complains of the following charge: "If you have acquitted the defendant of an assault with intent to commit the offense of rape, and if you believe from the evidence beyond a reasonable doubt that Fred Neill, a male, in the County of Johnson and State of Texas, about the time alleged in the indictment, made an assault upon the person of the said Willie Davis, a female, but not with the intent to commit the offense of rape upon her by force and against her will and without her consent, and if you believe from the evidence beyond a reasonable doubt, that the defendant did then and there assault her, the said Willie Davis, with the intent to have sexual intercourse with her, the said Willie Davis, a female, then and in such case you will find the defendant guilty of an aggravated assault," etc. To this charge, appellant objects because the same eliminates the issue of consent and of self-defense raised by the testimony in this case. All of the circumstances and facts outside of the testimony of the prosecuting witness go strongly to show that prosecuting witness consented for him to attempt to have sexual intercourse with her. We see no error in the charge.

Nor do we think appellant's contention to the effect that the evidence either shows rape or nothing, is correct. Nor do we think appellant's contention that simply because the State's evidence makes out rape, and the defendant makes out an assault by consent, would preclude the court from charging on aggravated assault.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*