## DAN BALLARD v. THE STATE.

### No. 2714.   Decided November 5, 1913.

**1.—Murder—Continuance—Practice on Appeal.**

Where the judgment is reversed and the cause remanded for other causes, the motion for continuance need not be considered.

**2.—Same—Evidence—Other Transactions.**

Upon trial of murder and a conviction of manslaughter, it was reversible error to permit the State, on cross-examination of the defendant, to show that he had lived and cohabited with his wife before he had married her; the manslaughter being based on illicit conduct of deceased with defendant's wife.

**3.—Same—Evidence—Collateral Matters—Impeachment.**

Upon trial of murder and a conviction of manslaughter, where defendant based adequate cause upon the illicit intercourse between deceased and defendant's wife, testimony as to trouble defendant may have had with reference to a third party about defendant's wife before defendant married her, and to impeach defendant's testimony thereon was inadmissible and reversible error.

**4.—Same—Cross-Examination—Collateral Matter—Rule Stated.**

It is not proper to allow a witness to be cross-examined as to any matter which is collateral and not material to the issue, merely for the purpose of contradicting him by other evidence, and the answer can not be subsequently contradicted by the party putting the question.

**5.—Same—Evidence—Other Transactions.**

Upon trial of murder and a conviction of manslaughter, testimony that defendant had associated with other women or had whipped his wife before their marriage and had had illicit intercourse with her before said marriage was inadmissible to counteract the testimony of the defense that the deceased had had illicit intercourse with defendant's wife and that defendant killed him on first meeting.                                         ()

**6.—Same—Evidence—Impeachment.**

Proof that defendant or any other witness in the case associated with lewd women or kept bad company was not admissible for the purpose of impeachment, as such matter was irrelevant to 'the case on trial. Following Holsey v. State, 24 Texas Crim. App., 35, and other cases; it not being shown that defendant's wife during coverture was guilty of any illicit intercourse, and manslaughter being based on deceased's illicit intercourse with defendant's wife.

**7.—Same—Rule Stated—Impeachment.**

Impeaching a material witness on an immaterial matter is reversible error, and it is not proper to allow a witness to be cross-examined on immaterial and collateral matter for the purpose of contradicting him by other evidence, unless the matter pertains to motive, etc.

**8.—Same—Rule Stated—Cross-Examination—Collateral Matter.**

When a witness is cross-examined on a matter collateral to the issue, his answer can not be subsequently contradicted by the party putting the question.

**9.—Same—Rule Stated—Credibility of Witness.**

Mere accusations or evidence of particular acts of misconduct are not admissible to affect the credibility of a witness; it must be shown that he has been legally charged with a felony or a misdemeanor imputing moral and legal turpitude.

**10.—Same—Rule Stated—Adulterous Relations.**

If a witness answers no as to adulterous relations or other courses of conduct that might reflect upon him, the answer is completed, and opposing counsel should not be permitted to put other witnesses on the stand and impeach the witness by proving conduct and transactions that would lead the jury to believe that the witness had been guilty of adultery. Following Gonzales v. State, 54 Texas Crim. Rep., 230, and other cases.

**11.—Same—Charge of Court—Limiting Testimony.**

It is error in limiting impeaching testimony for the court either to assume that an act was done or that the witness had made such statement, and it is also error to single out one or more facts in evidence and limit this to motive. Following Green v. State, 49 Texas Crim. Rep., 645, and other cases.

**12.—Same—Self-Defense—Charge of Court—Relative Strength.**

Where, upon trial of murder and a conviction of manslaughter, the question of relative strength of the parties had nothing to do with the case, a charge on this matter in the court's charge on self-defense was reversible error.

**13.—Same—Charge of Court—Apparent Danger.**

Where, upon trial of murder and a conviction of manslaughter, the evidence raised the issue of apparent danger, the court, in his charge on self-defense, should not have submitted the question from the viewpoint of an actual attack made upon defendant by deceased.

Appeal from the District Court of Nacogdoches. Tried below before the Hon. L. D. Guinn.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

V. E. *Middlebrook*, for appellant.—On question of cross-examining witness: Branch's Crim. Law, sec. 867, and cases cited in opinion.

On question of admitting irrelevant testimony: Drye v. State, 55 S. W. Rep., 65, and cases cited in opinion.

On question of particular acts and misconduct to affect credibility of witness: Branch's Crim. Law, sec. 868, and cases cited in opinion.

On question of court's charge upon relative strength of parties: Swain v. State, 48 Texas Crim. Rep., 98, and cases cited in opinion.

C. E. Lane, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of manslaughter, his punishment being assessed at three years confinement in the penitentiary.

Briefly stated, the evidence shows that this killing grew out of the fact that deceased, George Miller, had been criminally intimate with appellant's wife. When appellant was first informed of the fact or learned of it, on the first opportunity he mentioned the matter to deceased, and was convinced at that time that the report was false. His wife denied it as did Miller. Subsequently, however, other information came to him that they were criminally intimate, and this was placed beyond any question. The details of this are unnecessary as it is a fact about which there was no question. Appellant met or went to see Miller about the matter. A difficulty came up between them. The deceased Miller was approaching defendant in a threatening attitude as if he intended to use a weapon, though he did not draw one; appellant shot and killed Miller. This was on the first meeting, and the evidence sufficiently discloses appellant went to see Miller with reference to it and talk the matter over with him. Upon appellant going to the deceased with reference to the matter, and deceased being told by appellant that he believed the intimate relations to be true, deceased got over the wire fence that separated them into the lane where appellant was and advanced on appellant, telling him if he believed it it was up to him, and at the same time putting his hand in or towards his pocket. When deceased got over the fence into the lane where appellant was, and when the parties were in the attitude above mentioned, appellant shot several times.

Having been convicted of manslaughter, both degrees of murder were thereby eliminated. The questions to be discussed arise from the introduction of evidence and the charge of the court, especially that part of the charge which relates to self-defense. The record is voluminous, but it is thought unnecessary to go into details.

1. The application for continuance is not discussed, because the case will be reversed upon other matters, and the absent witnesses may be procured upon another trial.

2. The court permitted the State's counsel, over his objection, to require appellant while testifying in his own behalf, to testify that he had lived and cohabited with his wife, as a wife, before he had married her. The statement of facts is referred to by the court in qualifying the bill of exceptions. An examination of the evidence in

this connection will show that appellant had illicit relations with his wife for about two years before their marriage, and that at the time of the killing she had been his wife for six or seven years. We are of the opinion this testimony was not admissible. It is not illicit relations of the husband with the woman that he subsequently marries that relates to adequate cause; and besides this was a matter that should not have been injected into the trial of the case. It had occurred six or seven years prior to the homicide; he had married the woman and taken upon himself the duties of husband and protector. Under such circumstances we believe this testimony should not have been permitted to go to the jury.

3. Another bill of exceptions recites that the State's counsel was permitted to ask appellant if he had not had trouble with Sol Johnson in San Augustine about his wife, accusing Sol Johnson of being intimate with her before he married her. The witness answered he had not had such trouble with Sol Johnson. After the witness had so testified Sol Johnson was called by the district attorney to the witness stand and he elicited from him the fact that he and appellant did have such trouble. Various objections were urged to this testimony. We think this testimony was not admissible. This was a collateral matter occurring before the marriage between defendant and his wife, and was in no way connected with the homicide. Sol Johnson had nothing to do with the matters occurring between appellant and Miller, and it injected into the case a collateral issue we suppose for the purpose of impeaching the witness upon that collateral matter. In the first place this testimony was not admissible, and in the second place it should have rested with defendant's answer. The authorities are clear and apparently all one way that it is not proper to allow a witness to be cross-examined as to any matter which is collateral and not material to the issue, merely for the purpose of contradicting him by other evidence. It seems to be equally clear that where the witness is cross-examined on a matter collateral to the issue, his answer can not be subsequently contradicted by the party putting the question. The authorities sustaining this will be found collated in Mr. Branch's work on Criminal Law, sec. 867.

4. Another bill recites that over appellant's objection the court permitted the district attorney to ask him while on the witness stand testifying in his own behalf if his wife lived in the house with Nellie Love before he married her; how many times did Nellie Love come there and catch him in bed with his wife before he married her. If it was not a fact that he gave his wife several beatings about other men before he married her, and if it was not a fact that he ran her out of the yard with a pistol, and beat her about other men; and how many times did he have a row with Andrew Carr about his wife before he married her; and if it was not a fact that he had a row with Sol Johnson about his wife before he married her, and if it was not a fact that Sol Johnson informed appellant that she was "a free woman." He

also was asked how he came to live with her before he married her, and if it was not a fact he married her to keep from being prosecuted because he hit her with a pistol and whipped her.    He was also asked if it was not a fact that during the time he was living with his wife he was not intimately associated with Cal McCord's wife, and if he was not intimate with her during that time.    These questions were required to be answered and entered into the case at some length.    All these matters upon another trial should be excluded.    It would make no difference, so far as the trouble between deceased and the defendant, and this case under the facts as it occurred, that appellant had associated with other women or had whipped his wife before their marriage or lived illicitly with her before their marriage.    It was several years before this occurrence and could not enter into this case under the circumstances. The authorities before cited, we think are sufficient.

5.    Another bill recites that the State put the witness Susan McCord on the stand and asked her the following question:    "Now, I want to ask you, if it is not a fact, that just before George Miller was killed, say for several months before, and up close to the time he was killed, if Dan Ballard did not frequently come to your house, in the daytime, when your husband would be away from home, and you and him would go into the house, and shut the doors, and pull down the windows." This was denied by Susan McCord.    The State was then permitted to call S. J. Wilkerson to impeach Susan McCord on that issue, and directly also to impeach appellant with reference to the same matters. Other bills of exception bring to light the same matter and are substantially the same matter.    This testimony was not admissible.    Proof that appellant or any other witness in the case associated with lewd women or kept bad company is not admissible for the purpose of impeachment.    Holsey v. State, 24 Texas Crim. App., 35; Arnold v. State, 28 Texas Crim. App., 480; Hudson v. State, 41 Texas Crim. Rep.; 453; Reed v. State, 42 Texas Crim. Rep., 572; Neill v. State, 49 Texas Crim. Rep., 219.    Nor is this placed in any better light because appellant and Susie McCord were material witnesses, that they were impeached upon an irrelevant and immaterial matter.    The impeachment of a material witness on an immaterial matter is not harmless error.    See Branch's Crim. Law, sec. 867, where a great number of authorities are collated in support of this proposition.    The text is so tersely laid down by Mr. Branch and the authorities being so much in point we deem it unnecessary to go further into this matter.    It may be that acts of adultery by appellant's wife during coverture if known to him could be admitted.

Another rule may be laid down in this connection:    "Impeaching a material witness on an immaterial matter is reversible error, because, by discrediting the witness, and showing the jury, that upon an immaterial issue he had testified falsely, it is calculated to make the jury believe that he may have testified falsely in regard to other matters which were material."    Same authorities cited in the above proposition.

This is a quotation from Mr. Branch's work on Criminal Law, sec. 887, and the authorities are collated under that proposition. The statement of the proposition could not well be better condensed or more tersely or correctly stated, and the authorities sustain this, and this ruling of the court was error.

Another rule is equally correct and as tersely stated by Mr. Branch: "It is not proper to allow a witness to be cross-examined as to any matter which is collateral, and immaterial to the issue merely for the purpose of contradicting him by other evidence." The exception to this rule may be matters that pertain to motive, interest or animus of a witness, but that rule does not apply here.

Another rule may be stated also in this connection: "When a witness is cross-examined on a matter collateral to the issue, his answer can not be subsequently contradicted by the party putting the question." See Branch's Criminal Law, sec. 867, for the authorities. Again the rule may be herein invoked correctly that, mere accusations or evidence of particular act of misconduct, are not admissible to affect the credibility of a witness. A witness can only be impeached as to other offenses by showing that he has been legally charged with a felony, or a misdemeanor, imputing moral and legal turpitude. See Branch's Crim. Law, sec. 868, for collation of authorities.

. Another proposition is correctly stated by Mr. Branch as follows: "If a witness answers no, as to adulterous relations or other courses of conduct, that might reflect upon the witness, the answer is conclusive, and it is improper for the court to permit opposing counsel to put other witnesses on the stand and impeach the witness by proving conduct and transactions that would lead the jury to believe that the witness had been guilty of adultery." Gonzales v. State, 54 Texas Crim. Rep., 230; Sims v. State, 4 Texas Crim. App., 144.

6. It is contended the court erred in his charge wherein he sought to limit the impeaching testimony against Susan McCord. That charge reads as follows: "Evidence is also before you as to whether or not defendant had sexual intercourse with Susan McCord; this evidence can not be considered by you as a circumstance against the defendant, but is before you for the sole purpose of enabling you to pass on the interest, if any, and the credibility of the witness, Susan McCord." There are several objections to this charge, but suffice it to say this was error. The evidence does not show, except circumstantially from one of the witnesses, that appellant and Susan McCord were intimate. One witness did swear that he had seen appellant go to the house of Cal McCord, the husband of Susan McCord, during Cal's absence, upon which occasions the door would be shut and the window blinds closed or the curtains down. This may have been or not a suspicious circumstance, but it did not warrant the court in assuming that there had been adulterous intercourse and so instructing the jury. It is error in limiting impeaching testimony for the court either to assume that an act was done or that the witness had made such statement. See

Green v. State, 49 Texas Crim. Rep., 645. It is also laid down that it is error to single out one or more facts in the evidence and limit this to motive. This would be a charge upon the weight of the evidence. See Pannell v. State, 54 Texas Crim. Rep., 498; Terry v. State, 45 Texas Crim. Rep., 264.

7. Appellant criticises the following charge on self-defense: "If you find that the defendant shot with a pistol and killed deceased he was justifiable in such killing if he did so to prevent George Miller from killing him or inflicting serious bodily injury on him, provided it reasonably appeared by the act of Miller or by the words of said Miller coupled with his act, that it was the purpose and intent of the said Miller to kill the defendant or to inflict on him some serious bodily injury and the killing must have taken place while Miller was in the act of killing him, defendant, or of inflicting such bodily harm on him, or after some act done by Miller showing evidently an intent to kill him or to inflict on him such bodily injury. So if you shall find that at the time defendant shot George Miller, he, deceased, had done some act which alone or by words accompanying it, taking into consideration the relative strength of the parties and all the facts and circumstances in evidence, viewed from the defendant's standpoint reasonably manifested to defendant's mind an intent upon the part of deceased to kill him or to inflict upon him some serious bodily harm, and if to protect himself from such danger or apparent danger, if any, as it reasonably appeared to the defendant, he shot and killed deceased, Miller, then in either event you will acquit the defendant." Various objections are urged to this charge, some of which we think are well taken. The question of the relative strength of the parties had nothing to do with the case. Appellant's theory of self-defense was based upon the appearances of danger. The deceased did not exhibit a pistol, and the evidence indicates he was not armed. The defensive theory and testimony in support of it related only to the fact that deceased had gotten over the fence in the lane where appellant was, and had started on him and made a gesture towards his pocket or had put his hand in his pocket. It was purely a case of apparent danger. There was no evidence that he was killing him. The evidence was to the effect that he reached to his pocket or into it producing upon appellant's mind the belief that he was then trying to get his pistol or some instrument with which to inflict upon appellant death or serious bodily injury. It is advisable at all times for the court to charge the law applicable to the particular facts in a pertinent and affirmative way, applying the law directly to the case made and the issues presented. As we understand the record, the question of relative strength of the parties had nothing to do with the case. There was no personal encounter between them. Appellant shot Miller, the deceased, before he reached him and while he was approaching him in the attitude above mentioned. It is unnecessary to cite the authorities. The question of relative strength of the parties under

the circumstances detailed in this record has frequently caused the reversal of judgments where the facts did not justify such charge.

8.    Another charge was given to which exception was taken, as follows:   "The defendant was justified in such killing and you will acquit him if you find he did the same to protect himself against any other unlawful and violent attack on the part of Miller besides an attack with intent to kill defendant, or to inflict serious bodily injury on him, as it reasonably appeared to defendant viewed from his standpoint.   But to justify himself in killing Miller to defend himself against an attack, if any, by Miller the killing must have taken place while Miller was in the very act of making such unlawful and violent attack."   There is no evidence in the record that calls for or justifies this charge.   There was no attack made upon appellant by deceased, violent or otherwise.   The facts have been sufficiently stated to show simply a case of apparent danger viewed from defendant's standpoint. Whatever of unlawfulness on the part of the deceased or purpose on his part to do violence or injury to appellant, was found in the appearances of danger already mentioned.   This did not justify this charge, and there was nothing in the record that called for it, and it was submitting to the jury an issue not developed by the facts and compromising his theory of self-defense.

All of the questions have not been discussed with reference to the objections to the rulings of the court in reference to the admission and rejection of testimony, but a sufficient number of them have been discussed to let the trial court understand that the testimony of which complaint was made and testimony of a similar character is covered by the decision.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*