### STELLA THOMPSON v. THE STATE.

No. 3111.   Decided April 29, 1914.

Rehearing denied June 3, 1914.

**1.—Theft—Circumstantial Evidence—Charge of Court.**

Where, upon trial of theft, the evidence did not raise the issue requiring a charge on circumstantial evidence, there was no error in the court's failure to charge thereon.

**2.—Same—Evidence—General Reputation—Prosecuting Witness—Bill of Exceptions.**

Where the bill of exceptions did not show that the trial court was in error in permitting the introduction of evidence of the general good reputation of State's witness, and did not exclude the idea that the said State's witness was sought to be impeached by contradictory statements, etc., there was no error in permitting the State to prove the good reputation of the State's witness for truth and veracity. Harper, Judge, dissenting.

Appeal from the District Court of Travis. Tried below before the Hon. Charles A. Wilcox.

Appeal from a conviction of theft; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney General, for the State.—On question of proof of general reputation: Branch's Crim. Law, sec. 877, subdivision 6; Warren v. State, 51 Texas Crim. Rep., 598; Neill v. State, 49 id., 219; Ricks v. State, 19 Texas Crim. App., 308.

DAVIDSON, Judge.—Appellant was convicted of theft of $52 in money from Lawrence Robinson, her punishment being assessed at two years confinement in the penitentiary.

Briefly stated, the evidence shows that Robinson and appellant are negroes. Robinson was working at the ice factory, and on the 4th of July he came to town about the middle of the day to go to work. He brought $53 in a purse, $52 of it for the purpose of depositing it at the bank. It being a legal holiday, the bank was closed, and he went to his place of business. Later he fell in with some women of loose virtue and went to bed with one of them. Preparatory to subsequent events he took off his pants. In one of the pockets of the pants was his purse with $52. in it, he having taken out one dollar for spending purposes. While he was in bed with the prostitute, appellant, who admits she is also a prostitute, went into the room and got his pocketbook from his pocket and went away with it. She went to a water closet. After she came from the water closet the purse without the money was found in the closet. The officers arrested her, and the prosecution followed.

Under this state of facts appellant contends that a charge on circumstantial evidence should have been given. He excepted to the court's charge for failure to give this phase of the law, and requested an instruction submitting it, which was also refused by the court. We are of the opinion that this was not a case requiring a charge on circumstantial evidence. The testimony of Robinson is to the effect that she got the pocketbook out of his pants, which was lying by the bed where he was carrying on his business with the other woman, and it was taken by appellant and carried away. We think this testimony relieves the case of being one of circumstantial evidence requiring a charge on that phase of the law.

Another question is suggested for reversal. The court permitted the State to introduce witnesses to prove the good reputation of Robinson for truth and veracity. Appellant urged various objections to the admission of this testimony. The question is sufficiently presented by bill of exceptions No. 3. This bill recites that Mr. Zilker was permitted to testify to the general reputation of Robinson for truth and veracity, and that it was good. It is unnecessary to state the objections,—there are several. The court signs the bill with an explanation. The only part of the explanation necessary to be considered here is as follows: "The testimony as to the reputation for truth and veracity of the witness, Lawrence Robinson, was admitted for the reason that while the witness, Lawrence Robinson, was on the stand, the defendant's attorney asked him several questions, in an effort to show that the witness, Lawrence Robinson, had made different statements on the examining trial and on

other occasions from the statements made by said Robinson in the trial of this case." The bill simply recites the court permitted this witness to swear to the general good standing of the witness for truth and veracity. There are some general propositions with reference to this character of evidence which may be stated as follows: First. Where a witness has been impeached or sought to be impeached by introducing contradictory statements, his general good reputation may be placed in evidence. Second. That if it is undertaken to be shown that he was testifying under corrupt motives or for fabricating testimony, his general reputation may be sustained as being good. Third. The mere predicate to introduce contradictory statements without their being subsequently introduced will not justify evidence of general good reputation. Just what the questions were, and the manner of bringing them before the jury in the examination or rather cross-examination of Robinson, is not stated in the bill as matters of fact, nor is it stated as a matter of fact that the contradictory statements were not introduced. The qualification of the judge, however, would seem to indicate they were not introduced. If the manner of examination was such as to show fabrication or corrupt motives on the part of the witness, then it would be permissible to sustain him as to truthfulness by showing general good reputation to that end. This bill does not exclude the idea that the court was correct in introducing it from these viewpoints. Under our recent decisions the bill must be sufficiently certain to manifest the error of the court, and unless the bill shows fully these matters it can not be considered. The bill of exceptions does not exclude the idea that the testimony was properly admitted, nor does it sufficiently show the court was in error. What we have said with reference to the two questions decided, we think, sufficiently disposes of the other bills of exception. The record taken as a whole suggest only these two questions for revision. Viewing the record as we do, we hold there was no sufficient error to require a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*

HARPER, JUDGE (dissenting).—I think the bill with the qualification of the judge sufficiently presents the question, and testimony of the general reputation not admissible, as the questions propounded were not of the nature to charge the witness with recent fabrication, or any of the other exceptions to the general rule, in my opinion, and I therefore dissent.

[Rehearing denied June 3, 1914.—Reporter.]

HARPER, JUDGE (dissenting).—I can not agree that the testimony of the general reputation for truth and veracity of the witness, Lawrence Robinson, was admissible, and I think the bill sufficiently explicit to call this court's attention to the error. The first bill reads:

"Be it remembered that upon the trial of the above numbered cause, the State's witness, A. J. Zilker, being upon the stand, the said witness

was permitted, over objections of the defendant, to testify to the following facts, towit: I know Lawrence Robinson and have known him about fifteen years. He has worked for me at the Lone Star Ice Factory; he was working for me on July 4, 1913, and all during that summer, I know his reputation for truth and veracity here in Austin; his reputation as a darkey is good; his reputation in the neighborhood where he lives and here in the city is good for truth and veracity; I find him to be above the average—and defendant at time said testimony was offered, objected to same for the following reason, towit: First. That said testimony was prejudicial to the rights of the defendant. Second. That same was not material to any issue in the case, in this that the defendant and the State had closed the main testimony in the case, and said testimony was not in rebuttal of any of the testimony upon the trial. Third. That the prosecuting witness, Lawrence Robinson, had told his story to the jury and defendant had not attacked his reputation for truth and veracity and the defendant had the legal right to have his testimony considered by the jury without being bolstered by any testimony of the white witness. Fourth. That said witness was a white man, well known to the jury, and for him to relate to the jury said testimony was calculated to bias the jury in favor of believing the witness, Lawrence Robinson, and against the defendant, and the court overruled the objections to said testimony and permitted it to go to the jury as evidence, to which action of the court defendant then and there excepted and tenders this his bill of exceptions and asks that the same be allowed, signed and filed as a part of the record in this case.

"The foregoing bill of exceptions is allowed with the following qualification and explanation:

"The witness Zilker, in response to proper question by the State, and over the objection of the defendant testified that the witness Lawrence Robinson's reputation for truth and veracity was good; that the reputation was exceptionally good. Upon the objection of the defendant, and upon his request, the statement that his reputation 'was exceptionally good,' was excluded from the jury. Afterwards upon redirect examination by the district attorney, the witness in connection with his answer used the words, 'I find him to be above the average,' but no objection was made to said statement other than the general objection addressed to all of the testimony with reference to the truth and veracity of the witness.

"The testimony as to the reputation for truth and veracity of the witness, Lawrence Robinson, was admitted for the reason that while the said witness, Lawrence Robinson, was on the stand, the defendant's attorney asked him several questions, in an effort to show that the witness, Lawrence Robinson, had made different statements on the examining trial and on other occasions from the statements made by said Robinson, in the trial of this case."

The next bill complains of the testimony of John J. Butler, a white man, who was permitted to testify that the reputation of Lawrence Rob-

inson had never been questioned; and that W. B. Loveless, a merchant, was permitted to testify: "I live in South Austin. I run a general merchandise store over there. I know Lawrence Robinson, a colored boy, and have known him since he moved into my neighborhood about two years ago. He has been renting a house from me up until about one day after Christmas when I sold the place. He trades with me. I know his general reputation for truth and veracity in the community and it is good." Appellant made the same objections to this testimony that he did in the first bill.

In this case Lawrence Robinson is a negro, and he claimed that appellant had stolen $52 from him. No other witness testified that he had the money, or that appellant had stolen it. The negro woman as emphatically denied stealing the money, making a direct conflict in the testimony. If the jury believed the negro man they would convict; if they believed her, she was entitled to an acquittal, and under such circumstances the State was permitted to throw into the scales the testimony of three white men to support the testimony of the State's witness, when the appellant had not introduced any testimony to impeach him. It is true counsel on cross-examination asked him if he did not testify at the examining trial that he bought some beer or a lunch at Piper's saloon just before this thing occurred, and the witness answered that he did not. No evidence was offered that he did testify other than as he did on this trial. The only testimony offered by defendant was, that she took the stand and denied taking the money. In the first place, I think the bill full and explicit enough to present the error, and believe, when the qualification of the court is taken into consideration therewith, it shows in and of itself the testimony was inadmissible. The mere propounding of an interrogatory as to whether or not he had testified to an immaterial matter on a former trial, and he denies it, and no proof offered that he did so, does not authorize the introduction of supporting testimony, even though the State may need it to secure a conviction. In Neill v. State, 49 Texas Crim. Rep., 219, this court held: "The mere fact that prosecutrix and appellant's testimony was contradictory, one or the other, would not authorize appellant to introduce evidence of good character for truth and veracity. Nor would the sheer fact that the State had laid a predicate on cross-examination of appellant authorize appellant to introduce evidence of good character." In Jones v. State, 38 Texas Crim. Rep., 87, this court held: "This court erred in holding that the trial court should have permitted Mrs. Jones to be corroborated by her unsworn statements made to Kendall, in reference to the alleged rape, for this: The State did not seek to impeach her by showing contradictory and different statements made by her. The fact that the State did not admit the truth of her story can not be termed an impeachment. It is never admissible to sustain a witness by proof of general good character or otherwise, until the reputation of the witness is assailed for truth and veracity or impeached by showing contradictory statements. These are conditions precedent to offering testimony to

corroborate or sustain a witness. Assaults upon the veracity of a witness, made only by counsel in argument, do not constitute such an impeachment of the credibility of the witness as will authorize the admission of testimony to sustain his reputation for truth and veracity. Ricks v. State, 19 Texas Crim. App., 308; see Railway v. Raney, 36 Texas, 363; Morton v. State, 71 S. W. Rep., 281." Other cases could be cited but I deem it unnecessary. This is not the first time we have noted 'our objections to refusing to consider complaints when the error is manifest, even if the objections should not in every respect be as full as they should be, heretofore merely noting our dissent, but in this case I have thought it advisable to put in a vigorous protest, when the State relies on Robinson to prove that appellant stole the money, and she as vigorously denies it, and the issue was, was the State's witness or appellant telling the truth.