## WILL CLAY, JR., v. THE STATE.

### No. 3817.　Decided November 24, 1915.

**1.—Murder—Evidence—General Reputation—Witness—Impeachment.**

Where the State's main witness was flatly contradicted by the testimony offered by defendant's witnesses, this did not authorize the introduction of testimony for truth and veracity of said State's witness, no predicate having been laid to impeach him or that he was a stranger in the community.　Following McCue v. State, 75 Texas Crim. Rep., 137.

**2.—Same—Withdrawing Testimony—Requested Charge.**

Where, upon trial of murder, testimony as to the general reputation of a State's witness was illegally introduced, the defendant could raise the objection for the first time in a requested charge to withdraw said testimony from the jury, and a refusal to do so was reversible error, especially since the statute now requires the court to give his charge to the jury before argument is begun.

**3.—Same—Self-defense—Charge of Court.**

Where, upon trial of murder, the court submitted a charge on self-defense, and also a requested charge by the defendant, which covered the criticism made upon the main charge, and the two charges were not inconsistent, there was no reversible error on that ground.

Appeal from the District Court of San Augustine.　Tried below before the Hon. A. E. Davis.

Appeal from a conviction of murder; penalty, twenty-five years confinement in the penitentiary.

The opinion states the case.

*Foster & Davis,* for appellant.—On question of general reputation for truth and veracity of witness: Rushing v. State, 25 Texas Crim. App., 603; Murphy v. State, 40 S. W. Rep., 978; Harris v. State, 45 S. W. Rep., 714; Payne v. State, 50 S. W. Rep., 363.

*C. C. McDonald,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—This record presents the old story of conflict, positive and direct, as to the circumstances attending the homicide.　The State's case puts the defendant in the wrong from the beginning.　The defendant's case puts him acting in self-defense.　The evidence, we think, is unnecessary to be detailed.

A witness named Jones was one of the most important, if not the most important State's witness.　In rebuttal the State offered quite a number of prominent witnesses, among them the sheriff, to sustain the general reputation of the witness Jones as to truth and veracity.　No

attack had been made on his testimony by impeachment or offer of impeachment, and no predicate laid for impeachment. Branch's Crim. Law, sec. 876. It is true that the testimony of the witness Jones was directly and flatly contradicted by testimony offered by the defendant as to the facts about which Jones testified, but this did not authorize the introduction of evidence to sustain his reputation or standing as a witness and his credit from the viewpoint of veracity. McCue v. State, 75 Texas Crim. Rep., 137, 170 S. W. Rep., 280. Jones was not a stranger in that community, but had lived there a long time, and these people knew him. There was no predicate laid, nor questions propounded indicating he had testified differently or had made different statements. In the Thompson case, 74 Texas Crim. Rep., 145, 167 S. W. Rep., 345, predicate was laid to impeach, but no evidence showing different statements was tendered. Evidence of general reputation was held to be properly admitted. At the time this testimony was introduced appellant offered no objection, and the first time he raises the question as to the impropriety and illegality of this testimony was in a written charge to the court requesting him to instruct the jury not to consider this testimony with reference to the standing of Jones for veracity for any purpose. This was refused by the court. As this case is presented, this was important testimony. Jones was contradicted as to the main facts and the State had made out a pretty strong case against appellant. The State necessarily relied largely upon the testimony of Jones to support its theory of murder. His testimony may have put the defendant in the attitude of provoking the difficulty and bringing about the final tragedy. This was emphatically denied by appellant in his testimony as well as by other witnesses placed on the stand by him. The testimony of Jones, then, was directed at the very vital point of the case. For no other reason than the fact he was contradicted by these other witnesses as to those facts, or rather they testified exactly contrary as to the condition or environments at the time of the difficulty, did not justify the introduction of testimony showing that his reputation for truth and veracity was good. It is sometimes a close question as to the withdrawal of testimony illegally admitted, but whenever that testimony is illegal and material, or is calculated to affect the trial of the case injuriously to defendant, then the testimony, although withdrawn, can not cure the error. But here the court positively refused to withdraw it. It is sometimes, also, a close question with reference to the withdrawal of testimony at the stage of the trial when the motion is made, but whatever that may be or whenever it may occur, if the testimony is illegal and material, or likely to have a material bearing upon the case, it may be withdrawn, and it is error not to withdraw it, even when requested in a charge. Prior to the enactment of the late statute which requires the court to give the charge to the jury before argument is begun, the matter would have presented less trouble than here presented. But now these charges must be given before the argument by counsel for the State or defendant so that exceptions may be taken and errors pointed out. The court may modify

or change his charge to meet the suggestion or criticism. This bill shows this matter was properly presented in accordance with this late statute. So before any argument was begun to the jury, this charge was requested; it was not given, but expressly refused. So the defendant has brought himself strictly within the rules provided and as now existing. If this evidence had been withdrawn from the jury no argument could have been predicated upon it before the jury. It was permitted to stand before the jury, and, of course, became the subject of argument by counsel for the State against the defendant. Though a little late in his objections as to this matter, still he is within the rule, and the court could have withdrawn it so that the matter would not have been considered by them, nor would it have been the subject of discussion by counsel. We believe this error of sufficient importance to require a reversal of this case, and especially in view of the fact that appellant was awarded twenty-five years in the penitentiary. The jury could have awarded him five years, but they did not; they gave him twenty-five. The authorities will be found collated in Mr. Branch's valuable work on Criminal Law, section 323. Some of these cases may be said to be exactly as this case, that is, the first objection was made to the introduction of illegal testimony in requested instructions withdrawing such testimony from the consideration of the jury. That practice has been sustained by this court, so far as the writer is aware, in all its history, provided, of course, the testimony is of such a nature as would be hurtful. Branch's Crim. Law, sec. 874, p. 557. Also for discussion of allied and kindred questions as to materiality of such testimony and its dangerous position in a case see Mr. Branch's Crim. Law, secs. 321 and 322.

There are objections urged to the court's charge on the theory of self-defense. As given by the court in the main charge it may be said to be subject to criticism, but appellant requested an instruction, which was given by the court, which seems to cover the criticism he made upon the charge of the court, known as special charge No. 1 in the record. If these two charges had been inconsistent so as to leave the jury in doubt as to what the law was, his proposition might be maintainable. The theory of the defendant was the court's charge was a little restricted in submitting the view of danger. He submitted it in a general way upon real and apparent danger. The requested instruction, which was given, submitted it more closely and directly applicable to the immediate facts. This the court gave. The two charges are not inconsistent, but the requested instruction is but an amplification of the doctrine of apparent danger, applying the law directly to the facts. We do not believe there was any error in this matter.

For the error discussed the judgment will be reversed and the cause remanded.

*Reversed and remanded.*