## B. F. Hurst v. The State.

No. 5445.   Decided December 10, 1919.

1.—Murder—Evidence—Irrelevant Testimony.

Where, upon trial of murder, the evidence developed that deceased and his wife, the latter being defendant's daughter, moved in the house of de-

fendant with his permission, occupying one room thereof, it was reversible error to show by the testimony of said daughter that she moved into said room because she expected to become a mother soon, etc., this testimony having no connection with the difficulty and its effect evidently influenced the jury adversely to defendant's cause. Following: Tyson v. State, 14 Texas Crim. App., 390, and other cases.

### 2.—Same—Evidence—Irrelevant Testimony.

Upon trial of murder, and a conviction of said offense and raising the issues of self-defense and manslaughter, it was reversible error to permit the private prosecutor to ask defendant whether he had not been separated from his wife forty times before he ever met the deceased, the witness answering that he had been separated once; the evidence showing that the defendant and his wife were then living separately, and the previous separation of defendant from his wife had no bearing upon the case and this testimony injuriously affected the defendant.

### 3.—Same—Evidence—Irrelevant Testimony.

Upon on trial of murder, it was error to permit the private prosecutor to ask defendant on the witness stand whether he had not whipped his wife theretofore in another county, although the witness answered in the negative.

### 4.—Same—Evidence—Irrelevant Testimony.

Upon trial of murder, it was reversible error to permit State's counsel on cross-examination of defendant's son to ask him if he was not present at the time his mother told his father, before the killing, that she was going to stay in the room with deceased and his wife, and that thereupon his father kicked witness' mother; and this although the witness answered in the negative, as the answer of the witness could not have removed the evil effect of the question.

### 5.—Same—Evidence—Declaration of Defendant.

Upon trial of murder, it was error to permit testimony that defendant had told a third party that defendant's wife had been telling lies on him around in the neighborhood, as this had no connection with the homicide.

### 6.—Same—Rule Stated—Illegal Evidence.

Whether evidence of an illegal character may have entered into the verdict it will be error if it leads to a conviction, and when without the error the conviction may not have been obtained or has resulted in a higher punishment, as in the instant case.

Appeal from the District Court of Milam. Tried below before the Hon. John Watson, judge.

Appeal from a conviction of murder; penalty, eight years imprisonment in the penitentiary.

The opinion states the case.

*R. Lyles, Robt. M. Lyles, T. H. McGregor,* for appellant.—Upon question of permitting wife of deceased to testify that she moved to defendant's house because she was in a family way: Wilkerson v. State, 60 Texas Crim. Rep., 388, 131 S. W. Rep., 1108, and cases stated in the opinion.

On question of other irrelevant testimony: Cazley v. State, 17 Texas Crim. App., 267; Fischel v. State, 14 S. W. Rep., 391, and cases cited in the opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.— On question of testimony of deceased wife and others: Wagner v. State, 53 Texas Crim. Rep., 306; Davis v. State, 204 S. W. Rep., 652; Bolin v. State, 204 S. W. Rep., 335; Elder v. State, 68 Texas Crim Rep., 520, 151 S. W. Rep., 1052; Wyres v. State, 74 Texas Crim. Rep., 28, 166 S. W. Rep., 1150.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder and given eight years in the penitentiary.

The indictment charged him with the murder of Wes Whiteley. Appellant was the father-in-law of deceased. They were living upon the same farm, Whiteley working part of the land. After Whiteley moved from Williamson county to the farm occupied by appellant in Milam County, he occupied for a while a house on the premises, but later on, with the consent of his father-in-law, moved into the residence of his father-in-law. The family of deceased consisted of himself, wife and one child. Deceased occupied one part of the house, and appellant and his family another part. Directly after deceased moved into appellant's house appellant's wife separated from him and lived with the deceased and his family, and refused to associate with, cook for or have anything to do with appellant. Appellant testified he heard deceased and his wife persuading his wife to leave him and live with them. Deceased on more than one occasion had whipped or attacked the son of appellant, even threatening his life. There is evidence that deceased carried his pistol and had made threats against the life of appellant. There is also evidence to the effect that shortly prior to the killing deceased had stated to a witness that if appellant jumped on him about whipping his boys he would turn his toes up to the daisies; that deceased wanted witness to buy appellant's crop for him, and when advised by witness to move out of appellant's house, stated that if either party moved it would be appellant, that he was not that kind of a hair-pin." Another witness testified that the deceasel undertook to induce him to buy the crop of appellant for him, deceased, and stated that if he could not get rid of appellant one way he would another, that he did not desire him on the place, and could not get along with him. This was shortly prior to the killing. Appellant's son testified deceased made an attack on him and gave him a beating shortly before the killing, and cursed him, informing him that he was going to run him, witness, the witness' brother and appellant, father of the witness, from the place, and this statement seems to have been made also to the younger brother. Appellant testified that his daughter, Mrs.

Whiteley, asked him not to mention these matters to deceased, as deceased was armed and would kill him; that his son also desired him not to mention the matter to deceased; that appellant had asked the deceased to move back into the house from which he had moved, which deceased refused and informed appellant that if he was looking for trouble he would give him all he desired. On the day of and just preceding the difficulty deceased had pulled some of appellant's corn. Appellant protested and the difficulty followed. Appellant's son handed him a gun with which to kill deceased. The evidence is in direct conflict as to how the difficulty arose. Appellant and his two sons testified that deceased was approaching or pursuing appellant with an axe at the time the son Ed handed appellant the gun with which to kill deceased. Mrs. Whiteley testified that deceased was fleeing from her father at the time he was killed. The wound was inflicted in the face, which seems to have proved almost instantly fatal. This is a sufficient statement to bring in review some of the questions suggested for revision.

One of the bills recites that the county attorney asked Mrs. Whiteley the following question: "Was there anything that caused you to want to make that move?" Various objections were urged, and she was permitted to answer: "It was on account of my condition. I was expecting to become a mother; I was in a family way. The killing occurred on Tuesday and I became a mother on Sunday." To the same witness the State propounded the following question: "How long after you moved in was it before you expected to become a mother?" She answered: "After I moved into the house with them it was about three weeks, I reckon." Various objections were urged to this testimony, which we think should have been sustained. This seems to have had no connection with the difficulty, unless it be the mere fact that Mrs. Whiteley had moved into her father's residence before the homicide. It had no relation to the killing, and its effect evidently was to influence the jury adversely to appellant's cause. It will be noticed that appellant received three years in advance of the minimum punishment for murder. Under the following authorities we think the court erred in admitting this testimony: Roquemore v. State, 59 Texas Crim. Rep., 568, 29 S. W. Rep., 1123; Faulkner v. State, 65 S. W. Rep., 1096-1097; Wilkerson v. State, 60 Texas Crim. Rep., 388, 131 S. W. Rep., 1111; Garzley v. State, 17 Texas Crim. App., 283; Tyson v. State, 14 Texas Crim. App., 390-391; Carter v. State, 23 Texas Crim. App., 508; Jennings v. State, 57 S. W. Rep., 642.

In the Faulkner case, *supra,* it was held: "That it is incompetent to show the number of children of deceased and their ages, and that the same was simply done to excite sympathy and prejudice the jury."

In the Roquemore case, *supra,* it was said: "The fact that appellant was consorting with negro prostitutes Sunday evening on

a fishing excursion and drinking whiskey was in nowise connected with the subsequent difficulty and certainly placed appellant in a disadvantageous light before the jury; it did not prove nor tend to prove any issue in the case, and its only effect would be to prejudice.'' Practically the same was said in the Tyson case, *supra*, in an opinion by Judge Wilson. These two bills are treated together. They are upon the same subject.

Another bill recites that private prosecutor was permitted to ask defendant the following: ''Why, you had been separated from your wife forty times before you ever saw Whiteley, had you not?'' Various objections were urged to this, and the question was differently put in this form: ''Have you not been separated a number of times before you ever saw Wes Whiteley in your life?'' Objections were urged to this. The answer was ''Once.'' There are quite a number of exceptions urged to the question and answer, as well as the refusal of the court to exclude the question and answer from the jury. We think this was error. See Jennings v. State, 57 S. W. Rep., 642; Fischel v. State, 14 S. W. Rep., 391. The previous separation of appellant from his wife would have no bearing upon this case, and was of a nature and character to affect injuriously, we think, the defendant before the jury which tried him.

Another bill is reserved to the court permitting private prosecutor to ask appellant while on the witness stand: ''Didn't you whip your wife up there in Williamson County, while they lived up there?'' Various objections were urged to this. While the witness answered that he did not, still it shows the character of the examination and the illegitimate testimony that was sought to be placed before the jury. Upon another trial this character of examination and those matters should not be investigated or sought to be investigated. The case should be confined to the matters that belong legitimately to the case.

While a son of appellant was on the witness stand, on cross examination he was asked: ''Were you present at the time your mother told your father, before this killing, that she was going to stay in the room with Mr. Whiteley, deceased, and his wife, and that your father kicked your mother, were you present?'' We think this is totally irrelevant. It was a matter, if it occurred at all, between appellant and his wife, and had no connection with the killing of deceased. It is true the witness answered ''No sir,'' but the question is so framed that the answer may not have removed any evil effect. If he simply answered that he was not present, the question was so framed as to show it could be answered in that way and yet leave the impression upon the jury that appellant had kicked his mother, and this witness was asked if he was present, to which he answered ''No sir.'' This matter, if it occurred, had no place in the record, and if it did not occur, and counsel was aware of that fact, it should not have been permitted.

Another bill recites that while the witness Lange was testifying, this occurred: ''That the defendant Hurst was at his house on Sunday preceding the killing; that he had made some talk.' Counsel for the prosecution then asked witness: ''I will ask you if he did not state on that occasion, then and there, at your house, on Sunday just preceding the killing, that his wife had been telling damn lies on him around the neighborhood?'' The witness answered: ''He spoke and said he had come up to sell me his crop, and I said, what do you want to sell it for, and he said, well I suppose you have heard that my wife was going around and telling lies on me, and I told him I beg your pardon, she has not been up here that I know of, telling anything on you, and he said that she has been around Mrs. Critchfield's and elsewhere telling lies on me, and she had quit me and is living in the room with Whiteley and his wife, and went on and said he had had some trouble between the boys.'' We think this testimony was inadmissible under the authority of Ballard v. State, 71 Texas Crim. Rep., 587, 160 S. W. Rep., 718, and Branch's Ann. P. C., Sec. 165, and cases therein collated. This was a matter between the defendant and his wife and not between Whiteley and appellant. If in fact appellant made those statements, they referred to his wife and not to deceased, and it would not connect him with this matter and serve to prejudice the minds of the jury against appellant. The issues in the case were sharply drawn between self-defense and culpable homicide. Manslaughter was in the case as an issue. The jury gave appellant eight years for murder. The proposition here may be again stated, that where evidence of an illegal character may have entered into the verdict it will be error if it led to a conviction, when without the error the conviction may not have been obtained, or conceding the guilt of the accused, that it led to a higher punishment than may have been given but, for the error. This character of testimony was not admissible, and the jury did decide against him on his self-defense proposition, and not only failed to give him manslaughter, but gave him three years in excess for murder.

For the reasons indicated this judgment will be reversed and the cause remanded.

*Reversed and remanded.*