## PINK WILSON V. THE STATE.

### No. 9272.   Delivered March 3, 1926.

**1.—Manslaughter—Evidence—Of Animus of Witness—Properly Admitted.**

Where, on a trial for murder, resulting in a conviction of manslaughter, the father of appellant, in whose defence appellant claimed he killed the deceased, testified in appellant's behalf.   On cross-examination he was questioned as to threats and statements made by him with reference to deceased, and on his denying them, the state impeached him by witnesses who had heard his statements.   This testimony impeaching the witness was admissible upon the issue of interest, bias and animus of witness toward the deceased.   See Branch's Ann. P. C. sec. 163.

**2.—Same—Evidence—Impeaching Witness—On Immaterial Issue—Erroneously Permitted.**

Where appellant introduced as witnesses in his behalf, his two sisters, who were present and saw the homicide committed, it was error to permit the state to impeach said witnesses by showing that they had written and sent letters to and had met the deceased, on the day prior to the homicide, such occurence being unknown to appellant.   It is not permissible to impeach a witness upon an immaterial and collateral issue.   Following Ballard v. State, 71 Tex. Crim. Rep. 787; Fink v. State, 84 Tex. Crim. Rep. 536.

**3.—Same Evidence—Hearsay Statements—Inadmissible.**

Hearsay statements of a witness who testified that several hours after the homicide, in appellant's absence, his mother was heard to say to his father, that if it had not been for him, the killing would not have happened.   Such testimony should not have been admitted.   Following Streight v. State, 62 Tex. Crim. Rep. 453, and other cases cited.

Appeal from the District Court of Wood County.   Tried below before the Hon. J. R. Warren, Judge.

The opinion states the case.

*Bozeman & Cathey* of Quitman and *Floyd Hardy* of Farmersville, for appellant.

· *Sam D. Stinson*, State's Attorney, and *Nat Gentry, Jr.*, Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant was charged by indictment with murdering Ernest Aaron by shooting him with a gun, and found guilty of manslaughter, and his punishment assessed at two years in the penitentiary.

Briefly stated, the record discloses that, on the evening of the homicide, the deceased, Ernest Aaron, and Barney Pilkington passed the house of the appellant's father, where the appellant resided, going in the direction of a church house and were hollowing and making unnecessary noise, and shortly thereafter returned, and when opposite the house or just past it, going in an opposite direction, they called the father of the appellant out to the road, where a wordy altercation took place between said parties, and said T. H. Wilson, father of the appellant, turned back and walked to his gate, and the undisputed testimony shows that the other parties followed him a few steps in that direction. It was the contention of the State that the appellant at this point shot and killed the deceased without cause or provocation, and without the deceased's being armed. It was the contention of the appellant, and he so testified, as well as his father, his mother, three sisters and his brother, that when his father was called out by the deceased and said Pilkington, that they began to curse and abuse him and apply the vilest of epithets to him, and said Pilkington had a pistol in his hand, waving it, and said deceased had a drawn knife in his right hand; and both of them were cursing and vowing that they would kill T. H. Wilson, father of the appellant, and were following him to the gate, during which time the appellant had taken from the house a shotgun and gone to the gate, and that when the deceased had his hand uplifted with a knife drawn, cursing the said T. H. Wilson and stating that he would kill him, and advancing towards him, that appellant then shot and killed the deceased, and said Pilkington ran off; that said deceased fell and died with the knife in his right hand. The record further discloses that the officers found the knife open and in the hand of the deceased when they arrived at the scene of the homicide, but it was the contention of the State upon the trial that said knife, which was admitted to belong to Pilkington, was placed in deceased's hands after his death. The appellant, in addition to the other matters, testified that the only reason he had for killing the deceased was in the defense of his father, and to protect his life against the attack made on him by deceased.

The record further discloses that the deceased and appellant's sister, who was about 16 years of age, prior to the homicide, had been guilty of improper relations with each other,

and appellant's father, on two prior occasions, had ordered the deceased to stay away from his residence and keep away from his premises. It also appears from the record that the deceased was about 22 years of age, the appellant about 17 years of age, and the appellant's father was a man of about 82 years of age.

The record discloses 50 bills of exceptions, and on account of this great number we are precluded for the sake of brevity from attempting to discuss each one of them separately, and will have to content ourselves with discussing the issues and principles raised therein, instead of the bills separately.

The appellant complains, as set out in some of said bills, to the action of the court in permitting the State on cross-examination to ask T. H. Wilson, father of the appellant, if he did not state to the State's witnesses that he would have killed the deceased a long time before the date of the homicide, if they had let him alone, and that if Pilkington had not run off he would have been killed also, and in permitting a State's witness who had sought to borrow some shotgun shells from T. H. Wilson to to state that he, said Wilson, told him said shells were loaded for the deceased—all of which was in the absence of the appellant, and the State was permitted to introduce said testimony of the said several State's witnesses to prove said statements inquired about and to impeach the said T. H. Wilson. The court committed no error in admitting this testimony upon the issue of the interest, bias and animus of the witness T. H. Wilson, who had denied making such statements. Branch's Ann. Tex. P. C., Sec. 163.

The appellant also objected, as shown by some of said bills, to the court's permitting the district attorney to ask India and Alta Wilson on cross-examination after they had testified as above stated to his actions in full defense of his father, if they had not written and sent letters on the day prior to the homicide to the deceased and Barney Pilkington, requesting that they meet them on the evening of the homicide at a certain place, all of which was denied by them, and the State in turn was permitted to ask said sisters of appellant if they had not in fact met said boys at said place, which was also denied; then the State, over the objection of the appellant, was permitted to prove by said Pilkington and Burl Thomas that said girls did meet said deceased and Pilkington at the time and place inquired about by the State. Said bills of exception show that all the above testimony under discussion and the matters inquired about and proven by the State took place in the absence of the appellant, and were without his knowledge, hearsay, and

that same was an attempt to, and impeachment of, his material witnesses who had testified to his defense, on immaterial and collateral issues. We think the contention of the appellant made to the matters above raised is well taken, and that the learned judge fell into error in admitting said testimony, over the objections of the appellant thereto. Ballard v. State, 71 Tex. Crim. Rep. 787; 160 S. W. 716; Fink v. State, 84 Tex. Crim Rep. 536, on p. 539.

Objection is further urged to the court's permitting the State to prove by one of the State's witnesses that several hours after the homicide, in appellant's absence, that he heard the mother of the appellant state to his father that if it had not been for him, referring to appellant's father, that this matter would not have happened, referring to the homicide. We think the court was clearly in error in admitting this testimony, because in short it is nothing more nor less than allowing the State to show indirectly by one of the State's witnesses that it was the opinion of the mother of the appellant that her husband was the cause of the homicide, and said opinion or statement was right in the teeth of the testimony that appellant's mother had given in his own behalf, in which her testimony clearly showed that he was acting in the defense of his father, and was squarely in conflict with all the evidence for the defense. This court has frequently held that such testimony is not admissible and that it is the sole province of the jury to determine from all the facts and circumstances in the case, who caused the homicide after receiving the law properly applied thereto, from the trial court, and same is never left to the conclusion or opinion of any witness. Streight v. State, 62 Tex. Crim Rep. 453; 138 S. W. 748; Marsh v. State, 54 Tex. Crim. Rep. 147; 112 S. W. 321. For collation of authorities see Branch's Ann. P. C., Sec. 133, pp. 75-6-7.

It was also error for the court to permit the witness Pilkington for the State to testify that the deceased had informed him that the Wilson girls had written a letter requesting him and the deceased to meet them on the day of the homicide, because same was hearsay evidence, and the appellant could not be bound thereby without some knowledge thereof.

For the reasons above mentioned, we are of the opinion that the judgment of the trial court should be reversed and remanded, and it is accordingly so ordered.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.