## Ruperto Figaroa v. The State.

### No. 235.    Decided April 6, 1910.

**1.—Murder—Evidence—Motive—Conspiracy—Hearsay.**

Upon trial for murder, it was reversible error to introduce in evidence testimony with reference to a case pending in the Federal Court against a party who was not shown to have acted with the defendant or anyone else in the commission of the crime, for the purpose of showing conspiracy and motive; especially where the court charged the jury that no conspiracy existed between said party and the defendant to kill the deceased.

**2.—Same—Charge of Court—Conspiracy—Declarations of Third Parties.**

Where, upon trial for murder, there was no evidence connecting certain third parties with the killing, and showed no connection between them and the defendant in the homicide; and the court instructed the jury to this effect, but in another paragraph of his charge instructed the jury that they could use the acts of these parties against anyone who might have killed deceased for the purpose of arriving at a possible motive, etc., the same was reversible error.

**3.—Same—Evidence—Motion to Dismiss.**

On trial for murder, where the district attorney filed a motion to dismiss the prosecution against other defendants in the case, stating therein that State's counsel believed the defendant to be the person who committed the murder, etc., and that the other parties were accessories, it was reversible error to permit the State to introduce said motion in evidence.

**4.—Same—Evidence—Declarations of Deceased—Res Gestae.**

Upon trial of murder, where it appeared that the State introduced and read in evidence a certain writing of the deceased on an envelope found in his pocket possibly some six hours after he was shot, there being no predicate made for the introduction of dying declarations, the same was not res gestae.

Appeal from the District Court of Brewster. Tried below before the Hon. W. C. Douglas.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*Turney & Burgess* and *W. Van Sickle* and *Walter Gillis,* for appellant.—On question of the court's action in admitting in evidence State counsel's motion to dismiss the prosecution against codefendants: Abrams v. State, 40 S. W. Rep., 798; Long v. State, 17 Texas Crim. App., 128; Shamburger v. State, 24 Texas Crim. App., 433; Cecil v. State, 44 Texas Crim. Rep., 450, 72 S. W. Rep., 197, and cases cited in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the first degree, and allotted a life sentence in the penitentiary upon an indictment charging him with the killing of M. A. Ernst by shooting him with a gun.

Others were indicted for the same offense. When the case was called for trial appellant filed application for severance, asking that the other indicted parties be placed upon trial first because of a want of sufficient evidence to authorize their conviction. The district attorney thereupon dismissed the indictment against the other parties, stating in his motion to dismiss that there was not sufficient evidence upon which to base a conviction under the indictment pending against them, but if the defendants could be convicted of any offense growing out of the transaction upon which said indictment is based, it is the offense of accessory to murder, and further, because the State desires to tender the said defendants to appellant as witnesses in his case. Appellant's counsel then issued subpoena for the defendants, whose cases were dismissed, as witnesses to be used in this case. They were not used by defendant, however, but two of them were used by the State. The conviction is based entirely upon circumstantial evidence. The statement of facts is very voluminous, and it contains a great many matters of detail, which makes it a little difficult to state an intelligent summary of the testimony.

On Sunday evening, about 4 o'clock, the 28th of September, 1908, deceased was shot, as near as can be determined from the facts, at a gate. The construction of the gate made it practically certain that deceased dismounted his horse in order to open the gate. The circumstances make it reasonably appear that he was shot while at the gate, and went in the direction of his home, which was some six or seven miles away, a distance of about one and a half or two miles, when he dismounted, tied his horse, and was found by one of the witnesses, a Mexican, who testified upon the trial. He stated, in substance,

that he had been to the store of the deceased, and was returning to a little village on the Rio Grande called Boquillas, when he was called by deceased, who was off the roadside a short distance. The witness went to and found deceased shot and suffering. In response to inquiry by the witness deceased stated that he saw the party who shot him but did not know him. The witness went to the home of deceased, obtained a conveyance, returned to where deceased was, and conveyed him home. From that point he went back to the little village of Boquillas and gave information of the fact that deceased had been shot. The theory of the State was that appellant and Francisco Solis, Tomas Solis, Juan Solis, Benito Solis, Martin Solis, Jesus Garza, Crecentio Flores and Antonio Cardena entered into a conspiracy to take the life of deceased, and the above named parties are those who were indicted for this offense along with appellant, and against whom the indictment was dismissed by the district attorney. There was no evidence introduced to sustain the theory of conspiracy, and the court so instructed the jury in the charge. The evidence against appellant may be briefly summarized about as follows: On Saturday night before the homicide appellant spent the night with Francisco Hernandez. Bregido Hernandez also lived at the same place. Early Sunday morning, between daylight and sunrise, these witnesses stated that appellant owned a 32-40-calibre rifle, which he traded to Bregido Hernandez for a 44-Winchester rifle. This trade occurred about seven miles from Boquillas. That immediately upon making this trade appellant mounted a little burro and rode away leading another burro. The witness Bustos testified that that same morning, about sunrise, or a little after, appellant came to his house—the witness resided at Boquillas. Another Mexican witness, who was at the residence of Bustos, corroborates the statement of this witness that appellant reached Bustos' house about six or seven o'clock in the morning, and remained there until about 9 or 10 o'clock, when he disappeared or left there, returning about 3 or 4 o'clock that evening. It is made to appear also that he carried a 44-Winchester rifle with him. Another witness testified that about 3 or 4 o'clock he saw appellant going through a pasture, where he was at work cutting wood; that appellant was on foot, had his gun upon his shoulder, going in the direction of Boquillas, and coming from the general direction of the gate where deceased is thought to have been shot. Another witness testifies that the next morning after the shooting he was at the gate where the shooting is said to have occurred, and found on the ground two shells of a 30-30-calibre gun. Two days after the shooting two of the witnesses testified to the fact that up on the mountain at an elevation of about fifty feet or such matter, there was a large rock; that behind that rock, which rock was about seventy yards from the gate where the shooting is thought to have occurred, were found three 44-calibre shells that had been fired. They appeared to have been fired from eight to fifteen days when found. These shells were conveyed to the sheriff at Alpine, and produced before

the jury on the trial. The State proved by the opinion of one witness that the hole through the body of deceased was made by a bullet from a 44-calibre gun. The evidence makes it fairly apparent that the bullet went straight through the body, entering from the rear, striking no bone. It is shown that one of the Solis family owned a 30-30-calibre rifle. There was no evidence as to the size of the wound except the opinion of the witness above mentioned. Without undertaking to go into a detailed statement of the facts further in regard to the connection of the other defendants, it is sufficient to state that the State failed to show any connection between the other indicted parties and appellant in regard to the killing. The court realizing this, so instructed the jury.

1. Bill of exception No. 3 recites the fact that Rutledge, on his direct examination, in response to questions propounded by the district attorney, testified to the effect that he was acquainted with appellant; that appellant lived on the ranch of M. Solis & Sons prior to the death of the deceased; that the sons were Francisco Solis, Tomas Solis, Juan Solis, and Benito Solis. That after having so testified, the following question was propounded to him by the district attorney: "Do you know whether or not there was a case pending in the Federal Court at El Paso against Francisco Solis at the time Mr. Ernst was killed?" Various and sundry objections were urged to the question, which were overruled, and the witness answered: "I was told that there was a case against him." Objections were again urged to the question and answer. Mr. Rutledge was further asked: "At the time Mr. Ernst was killed, had you any information as to any charge pending against Francisco Solis in any court?" He answered in the affirmative. "Q. What court? A. Federal Court." The objections were all urged again. The witness was further asked: "Did you know whether or not Mr. Ernst was a witness in that case? A. Mr. Ernst told me he was a witness." He was further asked: "Were you informed whether or not that at the time Mr. Ernst was shot—had you information as to whether or not he was a witness in that case against Francisco Solis?" A. "Yes, sir; I had information." Q. "Had you information as to whether he was a witness for the government or for Solis; and if so, which?" A. "Yes, sir; I had information that he was a witness against Solis." Objections were all urged again. The court signs this bill with the explanation: "The court permitted this hearsay testimony at this time as matter of inducement on the assurance of the State that the indictment in the case would subsequently be introduced, which was done. The other objections urged are also urged against the introduction of the indictment and the court's explanation with reference thereto will be found in defendant's bill of exception No. 7, which raises the said objections to the introduction of the indictment."

Bill of exceptions No. 7 recites the introduction of the indictment in the Federal Court at El Paso against Francisco Solis for unlawfully

using the United States mail for purposes mentioned in the indict-
ment, and it also recites the introduction of a precipe for a subpoena,
and the subpoena itself for the deceased as a witness in the case. A
great many objections were urged to all this, which we deem unneces-
sary to set out, as they are very voluminous and cover every imaginable
phase of objection. They were overruled by the court, and this bill is
thus qualified: "The said testimony was offered by the State for the
avowed purpose of showing a conspiracy between defendant and the
Solises and the court permitted the evidence to be introduced on the
assurance of the district attorney, made in the presence and hearing
of the jury, that the State would be able to establish such a conspiracy
from the evidence; after the evidence was all in, the court notified
counsel for the State and defendant, before argument was begun, that
the court would instruct the jury in the charge that the State had failed
to show any conspiracy between defendant and any other person or
persons (as was done in paragraph No. 21 of the charge) ; but the
court did permit the jury to consider this testimony on the issue of
motive to the person or persons who killed Ernst as per paragraph
No. 20 of the charge."

There were objections also to the admission of other testimony of
a similar nature from the same witness. These bills may be treated
together. The evidence was hearsay, and it failed to connect appellant
in any way with any of the matters, therefore it should not have been
permitted to go to the jury for their consideration. The court, so
recognizing, instructed the jury in paragraph No. 21 of the charge,
that there was no testimony before them which would authorize them
to find the defendant or any other person or persons conspired together
or formed or entered into any agreement to take the life of the de-
ceased. And also, in this connection, in paragraph 20 of the charge,
the court instructed the jury "that Francisco Solis was indicted in
the Federal Court at El Paso, and that deceased was a witness in that
case; that the testimony with reference to said cause at El Paso, the
testimony as to any acts, conduct or declarations of said Francisco
Solis or of Jesus Garza or of any other person, except of the defendant,
can be considered by them for no other purpose than to assist them
in arriving at a possible motive to the person or persons who shot at
and killed the deceased, M. A. Ernst, for the said crime." The testi-
mony, as before stated, was inadmissible against appellant on the theory
of conspiracy, and this was expressly recognized in the 20th paragraph
of the charge. Without some evidence connecting appellant with Solis
in connection with the killing, any act or conduct on the part of Solis
or others would be inadmissible against appellant. In other words,
before the acts of Solis or others could be used or admitted against
appellant on question of motive, there must be some connection shown
between him and the others in regard to the offered evidence to show
the motive for the killing. In Thompson v. State, 19 Texas Crim.
App., 593, it was held that where a conspiracy was shown, the acts and

conduct of the other conspirators could be used against the appellant. To the same effect is Easterwood v. State, 34 Texas Crim. Rep., 400. But until the acts of others are shown connecting such others in some way with the alleged crime, their acts or such acts or conduct can not be used against the party on trial for any purpose. They would be incompetent and hearsay.

2. Exception was reserved, in this connection, to the court's charge as set out in paragraph 20 above quoted. We think this exception is well taken. In paragraph 21 of the charge the jury were instructed that the acts of the third parties could not be used as a basis of conspiracy between the parties to take the life of deceased. In paragraph 20 the jury were instructed that they could use the acts of these parties and consider same in arriving at a possible motive on the part of somebody or anybody who may have shot and killed deceased. The court was correct in charging the jury that such acts and conduct could not be used on the theory of conspiracy. If the testimony could not be used on the theory of conspiracy, then it became hearsay, for appellant was not in anywise connected with it, and it could not be used for the purpose of showing motive. Again, this charge authorized the consideration of these matters as motive against *anybody* who shot and killed deceased, whether it was appellant or not. This was clearly wrong. There was nobody on trial but appellant, and if it affected anybody else or tended to connect him with this homicide, it could not be used against appellant. Such matters, in order to be evidence against the accused, must connect him in some way criminally with the transaction. There was nobody on trial but appellant, and these acts and declarations, and the indictment and process in the Federal Court in the Solis case could not be used against appellant because of the failure to show a conspiracy, and it would make no difference whom else it might connect with the transaction, if it did not connect or tend to connect appellant with it, it could not be used against him. This charge was error, and we think clearly upon the weight of the evidence, and authorized the consideration of these matters as motive against appellant if it tended to show that *anybody* was connected with the killing.

3. The motion of the district attorney to dismiss the prosecution against the other defendants was introduced in evidence against appellant. Exception was urged on the ground that it was an ex parte statement made by the district attorney; that appellant was under arrest and confined in jail when the motion was made and filed; that it was hearsay, and a declaration of the prosecuting attorney, and not authorized to be used as evidence against the defendant; that no evidence had been introduced connecting defendant in any manner with the making of said motion or the statements therein contained; that said motion and the statements therein contained were not the statement of any fact or facts, but are the statements of the mere opinion and conclusion of the district attorney; also that the statements con-

tained in said motion to the effect that the State and the district attorney believed the defendant to be the person who actually committed the murder of deceased were but the statements of the opinion or conclusion of the district attorney, and was not the statement of any fact or facts within his knowledge; that the defendant had been afforded no opportunity to cross-examine the district attorney in regard to the matters stated by him in said motion; and on the further ground that if said motion was admitted in evidence the jury would probably believe the same was material and proper evidence against the defendant, and would attach weight to it as against him, and that for that reason the same was calculated to injure and prejudice him in the minds of the jury. We are of opinion this motion of the district attorney was clearly inadmissible. Many of the grounds stated in the bill are well taken. In the case of Cecil v. State, 44 Texas Crim. Rep., 450, this court said: "Nor was it competent for the State to introduce in evidence the motion to dismiss the case against Blankenship by the county attorney. This motion states that the case was dismissed because the State admitted the evidence insufficient to support a conviction. The court intimates that this testimony was admissible, because the defendant claimed all along that Berry Blankenship's case was dismissed because of a contract with the State. If such a claim was made by any testimony, the court should have so stated; and, in that event, it might have become proper to show that there was no contract by which Berry Blankenship was to turn State's evidence; but certainly it was not competent to show, in the attitude in which this case was presented, that the cause against Blankenship was dismissed because, in the opinion of the State, the evidence against him was insufficient. This was an indirect method of getting before the jury the opinion of the State, through its prosecuting attorney, with the endorsement of the court, as to the innocence of Blankenship, and was very hurtful to appellant." Other cases may be cited, some of which are here enumerated: Abrams v. State, 40 S. W. Rep., 798; Long v. State, 17 Texas Crim. App., 128; Shamburger v. State, 24 Texas Crim. App., 456; Harris v. State, 1 Texas Crim. App., 74; Hardin v. State, 40 Texas Crim. Rep., 208; Paris v. State, 35 Texas Crim. Rep., 82; Bell v. State, 2 Texas Crim. App., 215; Allen v. State, 16 Texas Crim. App., 237; Pinckord v. State, 13 Texas Crim. App., 468; Draper v. State, 22 Texas, 401.

From another aspect this motion was seriously detrimental to appellant in this: The motion states that in the opinion of the district attorney these parties were accessories to appellant in this homicide. This is a clear statement on the part of the district attorney that in his opinion they were guilty not as principals but as accessories. This could leave but one inference insofar as the document was concerned, that is, that in the opinion of the district attorney appellant was guilty as a principal and the other parties were guilty as accessories. If appellant was not guilty as a principal, then the other parties, of

course, could not be accessories to him in the perpetration of the homicide. A party can never become an accessory until there has been an offense committed, and the accessory then becomes criminally connected with the principal, not the offense, by reason of the fact that he is assisting the principal in some of the methods or means defined in the statute.

4. There are other matters of a similar nature introduced in evidence over appellant's objection, and urged by him for reversal. Without taking these up seriatim, we are of opinion the views already expressed sufficiently disposes of this character of testimony as being erroneous, and that it would serve no useful purpose to enter into a further discussion of those questions.

5. There is another question presented that may not be included within the above remarks. By bill of exception No. 5 it is shown that the State introduced and read as evidence to the jury the following writing, which was on an envelope found in the pocket of deceased by his wife about 10 o'clock at night, which was about two hours after he had arrived at his home Sunday night after he was shot. The shooting occurred about 4 o'clock in the evening. This would show that about six hours elapsed between the shooting and the time the wife found the writing in the pocket of her wounded husband. She says this document was in the handwriting of her husband, and is as follows: "Am shot I expect by one of Solis at gate first shot hit shot two more missed. Ernst." Various objections were urged to the introduction of this before the jury. The bill shows that a predicate had not been laid to introduce it as a dying declaration. In fact, the record discloses that deceased expected to recover, therefore the idea of it being introduced as a dying declaration is eliminated. As the matter is presented, we are of opinion that it is not shown to be res gestae. When the writing was placed on the paper is not shown, nor in fact was it attempted to be shown. The supposition or presumption might be indulged, and perhaps correctly, that it was placed on the paper after deceased was shot, which is shown to have been about 4 o'clock in the evening; and under the wife's testimony it may be assumed that the writing was placed on the envelope before 10 o'clock that night, but at what time it was placed there, there is nothing to show. The record shows that some time after deceased was found by the roadside shot he was carried home, but whether this writing was placed on the envelope before he was carried home or after he was carried home is not made to appear. If it could be shown that this writing occurred directly after the shot, so as to bring it within the rule of res gestae, it might be admissible, except that portion of it which says, "I expect by one of Solis." Of course, that would be a mere surmise or opinion and would be inadmissible from any standpoint. Upon another trial, in order to introduce this evidence, the State must lay a predicate to introduce it as a dying declaration or

bring it within the rule of res gestae. As it is presented here, it is not brought within either rule.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

McCord, Judge, disqualified.