R. E. Moon v. The State.

No. 12301.   Delivered April 10, 1929.
Rehearing denied State June 26, 1929.

The opinion states the case.

E. J. Cussen and Hoover & Hoover of Canadian, Jack Allen of Perryton, and Walter Allen and H. L. Adkins of Amarillo, for appellant.

A. A. Dawson of Canton, State's Attorney, Clifford Braly, District Attorney, R. T. Cornell and J. M. Bull, for the State.

CHRISTIAN, Judge.—The offense is murder; the punishment confinement in the penitentiary for twelve years.

Appellant and one Carlson had married sisters.  In 1922 appellant rented a section of land from his father-in-law.  Appellant's father-in-law died in 1926, and in 1927 the land on which appellant was living was partitioned among the heirs.  Appellant's wife received 213 acres out of the north east corner of the section and Mrs. Carlson was awarded 213 acres on the east side of the section just south of the land of appellant's wife.  Appellant had lived on the section of land from 1922 until the time said land was partitioned.  A portion of Mrs. Carlson's land was enclosed in one pasture with the land of appellant's wife.  There was a fence between

Carlson's land and that of appellant's wife. Appellant had kept this fence up. Deceased, A. W. Cline, according to the state's testimony, had rented approximately 35 acres of the Carlson land. According to appellant's testimony, he, appellant, had rented the Carlson land prior to the time that Cline had rented it and his lease had not expired. On the date of the homicide, according to the testimony of appellant, he was in rightful possession of the land and had control and possession of the line fence between his wife's land and the Carlson land. Deceased undertook to remove the boundary fence. Being approached by appellant he advised appellant that he had rented the land and had the right to remove the fence. Appellant demurred and according to his, appellant's testimony went to town for the purpose of obtaining advice from a lawyer. Deceased had given appellant no notice that the fence would be removed. Finally, after having visited the place where deceased was removing the fence, appellant advised deceased that he must desist. Deceased stated to appellant that he would see Carlson. Deceased left the premises, but later returned. Appellant testified that on the occasion of the homicide deceased had returned to the fence and was preparing to remove it. Appellant got his shot gun and went to the fence. He approached deceased, according to his testimony, and ordered him off of the place. He testified that deceased picked up a hammer and raised it as if he were going to strike him; that he pointed his gun at deceased's breast; that he had no idea of shooting deceased but intended to prevent him from hitting him with the hammer; that he decided from the expression on deceased's face that he had given up and that he lowered the gun; that he had his finger on the trigger and that as he lowered the gun he accidentally fired it. Deceased was shot about 5 or 6 inches above the knee, the wound ranging downward. He died as a result of the wound.

The court submitted the law of murder, self-defense and accidental homicide. Appellant timely and properly excepted to the failure of the court to submit an instruction covering the law of defense of property. He also presented several special charges covering the subject. We are of the opinion that the charge should have been given. See Articles 1222, 1224 and 1227 P. C. According to appellant's testimony he had rented the land from Carlson and was in possession of the boundary line fence between his land and Carlson's land at the time deceased was attempting to remove said fence. He testified that he had requested deceased to let the

fence remain, and that he had advised deceased that he had rented the land upon which the fence had been erected from Carlson. He said that deceased had returned to his land after having left at his request and had again attempted to remove the fence, and that he approached deceased for the purpose of forcing him to desist. While the testimony raises the issue of self-defense, the issue of defense of property is also raised. It is well settled that when the evidence has a tendency to raise the issue of defense of property it is incumbent upon the court to give a charge covering such issue. If deceased used force in an effort to deprive appellant of his property, appellant had the right to use whatever force was reasonably necessary to repel an aggression upon his property in order to prevent it from being taken from him, even to the extent of killing after every other effort in his power had been made to repel the aggression. Gilliam v. State, 272 S. W. 154, and authorities cited; Subdivision 4, of Article 1227 P. C.

The objections to paragraph 8 of the court's charge seem to have been well taken. It is suggested that upon another trial the form of charge laid down by Judge Ramsey in the case of Best v. State, 125 S. W. 910 should be followed. See also Harris v. State, 274 S. W. 568.

For the failure to submit a charge covering defense of property, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—Attention is directed to some inaccuracies in the synopsis of the evidence. There was testimony to the effect that the fence over which the controversy arose was situated on land which was under the control of the appellant. In calling it a "boundary fence" we were unhappy in the choice of words; and in stating the acreage of the Carlson land rented by the deceased we were inaccurate. The discrepancies, however, are entirely without weight on the legal question upon which the case turns. The evidence to the effect that the fence which it is claimed deceased was about to remove was upon the land under

the control of and in possession of the appellant, together with the other facts set out in the original opinion, exhibit the necessity of complying with the request of the appellant that the jury be instructed on the law relating to homicide in defense of property. See Griffin v. State, 100 Tex. Crim. Rep. 641.

The State's motion for rehearing is overruled.

*Overruled.*