## MARSHALL DAVIS v. THE STATE.

No. 14013.    Delivered February 25, 1931.
Rehearing Denied April 1, 1931.

The opinion states the case.

*E. A. Wallace,* of Cameron, for appellant.

*A. J. Lewis,* County Attorney, of Cameron, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, ten years in the penitentiary.

The only exceptions in this record are those taken to the charge of the court, and, as presented in appellant's brief, but two of his complaints are insisted upon, viz: that the court erred in not charging on appellant's right to defend against an attack,—not felonious in its character; also in not submitting appellant's right to defend against an invasion of his home.

We find nothing in the facts herein relating this case in any way to those cited in appellant's brief as authority on the proposition that appellant was entitled to a charge on his right to repel an invasion of his home. Appellant was not in his home when he shot deceased, nor was the latter attempting or threatening any entry into such house. Deceased, accompanied by his wife, came up to a point outside the gate to the yard around the house in which appelant was, and called for appellant to come out and talk to him. Appellant armed himself with a pistol, and, accompanied by his wife, went out into the yard to a point near where deceased was standing. Appellant testified that he called deceased to come to the gate. The most that could be gathered from the defensive testimony as to what further occurred, was that following verbal accusations deceased opened the gate and started at appellant in a threatening manner, and was shot by appellant, who claimed that he thought he saw deceased make motions as though to draw a pistol. Appellant did not go or retreat into the house or on the porch, nor did he show by testimony any

intent on the part of deceased to enter said house. Appellant cites Moon v. State, 113 Texas Crim. Rep., 230, 18 S. W. (2d) 635, a case where a man was destroying the fence of another who shot him. Also Allen v. State (Texas Crim. App.), 66 S. W., 671, a case where man inside his house shot through the wall, a man who was trying to get in. Also French v. State, 55 Texas Crim. Rep., 538, 117 S. W., 848, a case where a man followed another home and was there killed while trying to enter. Also Wells v. State, 63 Texas Crim. Rep., 618, 141 S. W., 96, and Mack v. State, 97 Texas Crim. Rep., 583, 263 S. W., 912, both of which are similar cases to those above referred to. We find nothing in this contention of appellant.

On the other point set up,—the State's testimony shows a killing apparently without excuse or reason other than that deceased approached appellant for an explanation of the conduct of the latter toward the wife of deceased, and was shot by appellant. The defensive theory supported by all the testimony for the appellant, was that after the preliminary conversation, about which all witnesses substantially agreed, deceased opened the gate, and with some statement started at appellant who backed away and finally shot.

Julia Johnson, a defense witness, swore: "When I got there I saw both parties standing at the gate. John come on through that gate. He came through the gate before Marshall shot. He came in and slammed the gate open and said 'Drop it,' he was walking as fast as he could. When John came through the gate fast Marshall was backing up getting his gun as quick as he could and when he got his gun he commenced shooting. John Turner just rushed onto Marshall. John Turner was following Marshall coming on him all the time."

Appellant's wife testified for him as follows: "He had his hand in his pants and pulled his hand out and I said 'John don't shoot Marshall' and when I said that he (John) slammed the gate open and run in the yard and Marshall spoke three times and told him to go back, and he come on in anyway, and Marshall went to shooting."

She also testified: "I thought John was doing the shooting. That is what I thought when I left them and broke and run."

Also: "I don't know what John said to Marshall when he started to pull the gun, but I know he said something to Marshall. I heard him talk but I did not know what he said; I was excited, but when John slammed the gate open Marshall spoke three times and told him to go back. I don't know what John said. I don't know why I didn't hear that, it frightened me to see him running on him."

Appellant swore in his own behalf as follows: "He had his hand in his pants, and he out with his hand and throwed open the gate with his other hand and I seen he was trying to do something and I went to backing back and my wife said 'John don't shoot Marshall' and I lowed

three times 'Don't come in here' and he run right up to me and when he run up on me I turned to shoot and run and shot him."

Also: "It was dark. He was coming in the gate; I don't know whether the gate was latched or not; he pushed it open; he opened the gate. When he pulled his gun out he broke in the gate. I mean when he reached in his side like he was going to get a gun. I had not already pulled my gun and he told me to drop it."

And again: "I thought he had a gun and was coming on me. I just kinda glanced back and saw the porch. I had my pistol right here all that time (indicating top of britches); I had not pulled it out and was not holding it on him. I said I backed back when he broke through the gate. When I backed back and he stuck his hand up here and said he felt like mixing with me I pulled my gun out and turned to run and when he said that I shot him."

Upon these defensive facts the trial court told the jury that when a person is attacked or threatened with attack so as that there is created in his mind a reasonable apprehension or fear of death or serious bodily injury, he is excused or justified in resorting to any means at his command to prevent such injury; and that it was not necessary that the accused be in actual danger; that a person has the right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real.. The jury were fully told that they must view the transaction from what they believed from the testimony to have been the standpoint of the defendant at the time in determining his right of self-defense.

We would be at some loss to determine, under the facts of this case, what rule or charge the court could have given to the jury as to their course in the event they believed that there was an attack made upon appellant by deceased but without felonious intent. In this connection we observe that no special charge was asked presenting what appellant thought to be a correct exposition of the law applicable to this theory. Deceased made no threat of any intention to whip or merely assault appellant. He had no weapon of any kind on his person when found after death. Evidently he came to where appellant was because he thought the latter had insulted his wife. Neither appellant nor any of his witnesses gave testimony from which the jury, if they accepted the defendant's theory, might have reached the conclusion that the purpose of deceased was other than to take life or inflict serious bodily injury upon appellant. The killing in this case was not the outcome of a fist fight as in Hathcock v. State, 103 Texas Crim. Rep., 518, 281 S. W., 859, cited by appellant; nor one in which the jury on its facts believed the accused to be guilty only of a misdemeanor, as in Britton v. State, 95 Texas Crim. Rep., 209, 253 S. W., 519, also cited.

The law applicable in any given case is dependent on the facts. We

see no good reason for believing that in this case a charge should have been given telling the jury what they should do if they did not believe appellant believed that deceased was,—in the language of appellant's exception,—"about to commit a felonious attack upon him." It follows that we are not in accord with appellant's contention in this regard.

We have considered the other matters presented in the record and deem them not of sufficient importance to call for discussion.

The judgment will be affirmed.

*Affirmed.*

#### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant renews his insistence that he was entitled to have the jury instructed as to his rights in preventing an invasion of his home, that is, the defense of his habitation against deceased. We have not only carefully read the excerpts from the testimony contained in the motion for rehearing which appellant thinks raised the issue, but have again painstakingly examined the entire statement of facts with that particular point in mind. We must adhere to the conclusion announced in our original opinion that the issue was not raised.

In the motion we are referred to Richardson v. State, 7 Texas Crim. App., 486; Wells v. State, 63 Texas Crim. Rep., 618, 141 S. W., 96; Newman v. State, 58 Texas Crim. Rep., 443, 126 S. W., 579, 21 Ann. Cas., 718; McGlothlin v. State (Texas Crim. App.), 53 S. W., 869. In our judgment none of them on the facts furnish any precedent applicable in the present case.

The motion for rehearing is overruled.

*Overruled.*