# JUNE 19, 1940

## ALEX FAMBRO V. THE STATE.

No. 21027. Delivered May 15, 1940.
Rehearing Denied June 19, 1940.

The opinion states the case.

*Floyd Jones* and *D. T. Bowles,* both of Brackenridge, *W. R. Ely,* of Abilene, and *Frank Sparks,* of Eastland, for appellant.

*Ben J. Dean,* District Attorney, of Breckenridge, *J. R. Black,* District Attorney, and *Esco Walter,* County Attorney, both of Abilene, *B. L. Russell,* Special Prosecutor, of Baird, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appellant was convicted in the District Court of Taylor County on a charge of murder and sentenced to twenty years in the penitentiary. The offense is alleged to have been committed in Stephens County and, after a trial with a hung jury in that county, was transferred to Taylor County, from which this appeal comes.

On November 16, 1938, appellant shot Dave Wagley, a neighbor. This occurred between 7 and 8 o'clock in the morning and the victim died about noon that day in a hospital in Breckenridge. There is some evidence that bad blood had existed between appellant and deceased for a period of time, but the immediate trouble arose over the title to a small tract of land or lot in what was once laid off as a townsite. Dave Wagley's

father-in-law, a Mr. Cooper, had acquired a deed to a tract of land, including certain lots to which appellant had prior deeds, together with a number of other lots which had been sold to various and sundry people. The town had died out or failed to materialize and none of the lots were occupied by the purchasers. Mr. Cooper and his son-in-law, Dave Wagley, had put all their lots under fence, plowed them and had planted or were fixing to plant grain on them. Previous to that appellant had, without any dispute from other claimants, moved a building off of the lots to other property which he owned in the community and had openly asserted title to the lots to which he had a recorded deed. After the land was fenced and plowed by Cooper and Wagley appellant consulted an attorney, who instituted suit in the form of trespass to try title. While this suit was pending appellant went early in the morning with two hands and a truck with tools and equipment and entered the premises by way of a gap adjacent to his lots and proceeded to pull the piping out of a well situated on it preparatory to moving it, as he had the building, to other property. Cooper and Wagley saw them there and approached appellant together. Wagley, acting as spokesman, commanded appellant to get off of the land.

There is a sharp difference in the testimony as to what occurred, Cooper giving his version while Leslie Vick and Homer Perry, the two workmen who had come with appellant, gave theirs. All agree, however, that the deceased approached cursing and, according to the testimony of appellant and his two witnesses, the deceased immediately called appellant very vile names, ordered him off and approached him in a threatening manner with his hands in his pockets.

It is sufficient to say that according to the testimony of Cooper, the act of appellant was unjustified, while the testimony of Perry and Vick with that of appellant raised an issue of self defense.

On the trial from which this appeal comes the State introduced its proof of declarations made by deceased before his death which were pertinent on the issue of self defense. In their motion for a new trial, as well as on examination of the witnesses, it is admitted that the State did not introduce this testimony on the first trial. The evidence is very important and bears directly on the issue raised by the defense. Just why the State did not introduce this evidence on the first trial is not explained, but the importance of that is of interest to this

court only on the issue raised in appellant's motion for a new trial and subsequently on the question of diligence on the part of the defense to obtain certain evidence which is presented as newly discovered evidence.

Albert Wagley, father of deceased, testified to a statement made by his son in the hospital, as follows: "He said something to me about dying. He told me he was going to die. At that time he was conscious or sane and knew what he was talking about. I did not ask him any questions to lead him on after that. He told me he wanted to tell me something then. He said: 'Papa, I thought he went home. He said he was going on home and when I looked up why there he stood with a gun. I couldn't do a thing but just throw up my hands.' "

Mrs. Katie Wagley, the widow of deceased, did not testify while the State was introducing its evidence in chief, but was placed on the stand in rebuttal and told the story of seeing her husband stagger immediately after he was shot, of jumping in their car and driving to him, taking him in their coupe and with her father going to a hospital in Breckenridge. She details certain statements of deceased made during the morning and before his death, as follows:

As they were leaving the scene of the tragedy for Breckenridge she quoted her husband as saying, "Cooper, I had an awful sweet little wife." This evidence was later withdrawn from the consideration of the jury by instruction of the court. Later she said her husband asked her the question, "Won't you put me away nice?" This statement made on the way to the hospital was also withdrawn from the consideration of the jury by instruction later. She further testified that after they reached the hospital her husband called her to the side of his cot and kissed her and told her that whenever she passed away to have them put her by his side; that he wanted to be buried beside her. This testimony was also withdrawn from the jury by later instruction. Whatever harm resulted from this testimony was of a nature that would linger with the jury regardless of instructions to disregard it. She further testified to the following statement by deceased: "Katie, when I first got up there he first drew a double bitted ax on me." Further, "Katie, when I first got there he drew a double bitted ax on me, and I asked him to lay it down, and we would settle it without further trouble. I asked him to lay the ax down and we would settle it without further trouble." When I say "I asked him" I am using Dave's words.

He said "I asked him to leave, and he told me he would leave" and he said, "I asked the other boys to leave. I thought he was leaving and I asked the other boys to leave. I turned around and when I turned around he was standing there with the gun and all I could do was hold my hands in the air and say, if you are that kind of a man shoot me." (Witness further says that she testified on the former trial and did not tell any of these things.) She further says that prior to his death that morning she did not hear him say anything indicating that he thought he might get well.

F. L. Freeland testified that he visited the hospital and heard Dave Wagley say that he tried to get appellant to wait and let the court settle it.

The testimony embracing the declarations of deceased made in contemplation of death was introduced at the close of the trial of the case in the town of Eastland, some sixty miles from Breckenridge, and it is reflected that appellant had no indication of the nature of this testimony until it was introduced by the State.

Appellant filed a motion for a new trial in which it is presented, among other grounds, that they had since the trial of the case discovered new evidence pertinent to the main issue in the case, that of self defense, and particularly as relating to the dying declarations of deceased and also on the question as to whether or not he contemplated death at the time such statements were made. Attached to this motion were the following affidavits:

One by Mrs. Billington saying that she was a nurse in the hospital at the time Dave Wagley was there, detailing the things that took place, in which she said that Wagley was, "Shouting a great deal in anger and cursing, which was all to the effect that he was going to be sewed up and go home. He repeated a number of times that he was all right and was cursing Alex Fambro a great deal. He told his wife not to cry; that he was not going to die and would go back home in a little while and be all right." She said, further that in her opinion he never thought that he was going to die. She was in and out of his room, but with him most of the time. She declared that she did not hear him make the statement testified to by his father as to the occurrences at the time of the killing.

The affidavit of Dr. P. C. Wray is attached in which he

said that he told Wagley that he would fix him up as soon as he could and he answered, "all right"; that Dave's wife started to weep and Dave told her not to cry, that, "we'll get these things back in here and I will go back home and be all right." He was present when the victim's father came into the room and heard him say, "Hello, Dad, he got me," but did not hear him say anything to his father about the things that took place at the time of the killing and particularly those things testified to by Albert Wagley, his father. He said that after he went into the operating room they gave him ether and that after that he was never in position to make a rational, sane or conscious statement. The doctor also stated that the attorneys for appellant had asked him previous to the trial about what took place and that he declined to tell them because he did not want to become involved in the matter. He told them subsequently that he did not know anything about it and did not want to be a witness on either side. He said that he never heard of any purported statement by Dave Wagley concerning appellant until after the trial in which this conviction was had.

The attorneys in the case also attach affidavits showing diligence to secure the testimony of the doctors and of the nurse.

The principal question presented on the appeal is whether or not the trial court should have, under this state of facts, granted appellant's motion for a new trial.

We must admit in the beginning that we are confronted with the consideration of a question under circumstances different to the ordinary. Appellant had gone through one trial of his case. His attorney had sought evidence from the doctors and the nurse as to what took place and they declined to tell. True, they could have brought them into court as witnesses and compelled them to testify; yet, it is doubtful if an ordinary prudent and skillful attorney would have done so. When witnesses decline to say what their testimony will be, they are not ordinarily placed on the stand as witnesses for the party calling them unless there is some circumstances making it necessary to do so, or unless the attorney has advice by which he feels secure in doing it. Viewed from the standpoint of the appellant and his attorneys, it is not unusual that they failed to call these witnesses, even after the other parties had testified. The evidence as to the state of mind of Dave Wagley at the time he made the statements, as well as the statements themselves, come to the court shrouded in mystery which would

justify the trial court in receiving an explanation as to why testimony of this nature was not presented on the first trial of the case. The interested parties in this prosecution were insufficiently diligent in revealing their testimony in the first trial, or else they were over diligent in the second. This is a circumstance for consideration by this court only on the question as to whether or not the appellant should have been required to meet the evidence when it was presented. Furthermore, the evidence as to the state of mind of the injured party at the time of making the statements was so nearly insufficient as to make it doubtful if it ever warranted the introduction of the evidence he was purported to have made. Oral reproductions of dying declarations are admissible when satisfactorily proven, Art. 725 C. C. P. But should not be so favored as to be admitted when there existed only a slight fear of death. The most which may be said of the testimony before us is that it contemplated a danger of death. All of this could be true and, yet, if the jury believed the evidence of the nurse and the doctor as to the state of his mind, then the statements would hardly be admissible. See Vernon's Ann. Code of Criminal Procedure Art. 725 and cases there cited. Edmonson v. State, 41 T. 497; Morgan v. State, 113 S. W. 934; Figaroa v. State, 127 S. W. 193. It is possible that he discussed these matters with his wife and father in the manner stated and yet retained a hope of recovery. If there did exist in his mind a hope of recovery at the very time of the utterances they would be inadmissible.

Appellant insists that he had a right to shoot Wagley in defense of his property. The pertinent facts on this issue are hardly disputed. Appellant seems to have been the holder of prior record title and apparently the owner of the property. However, this had been submitted to a civil court with jurisdiction to determine the rights of the parties. He was attempting to remove some of the pipe from an old well, but there is no evidence that the deceased was trying to harm the property, to remove any of it or to do other than insist that the matter of ownership be settled by the courts. He claimed to be in possession and appellant so alleged in his suit. If appellant had desired to possess his property, the courts offer a legal remedy. Under all the circumstances we do not believe that his right to defend his property was sufficiently invaded to warrant the taking of a life.

While it may be said that the act of the court in withdrawing certain evidence from the jury after its admission did not

cure the harm done, it becomes unnecessary to discuss these bills in view of a reversal of the case as they will not occur again.

For the failure of the court to grant appellant's motion for a new trial on the ground of newly discovered evidence, the case is reversed and remanded for new trial.

## ON STATE'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

A re-examination of the affidavits and counter affidavits attached to the motion for new trial, and the State's answer thereto, leaves us of the opinion that the judgment of conviction was properly ordered reversed and remanded.

It is necessary, however, to advert to some matters in our original opinion which we think should be modified.

When Mrs. Wagley's evidence was tendered it appears as a predicate for the receipt in evidence of statements made by deceased to her as it was developed that deceased said she had been a "sweet little wife," and also spoke of his wishes about how he should be buried, and like matters. These statements were withdrawn from the jury, but Mrs. Wagley's evidence as to what deceased said to her about the shooting was admitted. In view of the withdrawal by the court of the matters mentioned, we assume that the statement made by deceased to his wife about the shooting was admitted as a res gestae statement. In so far as the statements withdrawn from the jury might bear upon the condition of deceased's mind and his apprehension of approaching death either at the time he told his wife, or later told his father, as to how the killing occurred, the statements were admissible on the predicate for a dying declaration. As it appears to us from the record now before us deceased's statement that he had a "sweet little wife" does not seem relevant as establishing the predicate mentioned. The other two statements so withdrawn do appear relevant on that issue as we understand the present record.

The rule governing in cases of this kind is clearly laid down by this court in Downing v. State, 20 S. W. (2d) 202, in which the court said: "As a predicate for receiving in evidence a dying declaration, it is not essential that the declarant shall state in specific terms that he is conscious of impending death. It is enough if it satisfactorily appears in any mode that they were under that sanction, whether it be proved by

the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants stated to him, or from his conduct or other circumstances of the case; all of which are resorted to in order to ascertain the state of the declarant's mind. Hunnicutt v. State, 18 Tex. App. 499, 51 Am. Rep. 330. See collation of authorities in Vernon's Tex. Code Cr. Proc., 1925, Vol. 2, p. 805." See also Branch's Ann. Tex. P. C., Sec. 1863, p. 1035, and cases cited.

Upon another trial an issue may be drawn as to the predicate for admission of a dying declaration and calling for proper instructions to the jury upon that question. It is anticipatory of such contingency that we have thought it necessary to write as we have on the present motion.

The motion for rehearing is overruled.