# ALEX FAMBRO V. THE STATE.

No. 21569.  Delivered May 28, 1941.
Rehearing Denied October 22, 1941.

474

The opinion states the case.

*Floyd Jones* and *D. T. Bowles*, both of Breckenridge, *W. R. Ely*, of Abilene, and *Frank Sparks*, of Eastland, for appellant.

*Ben J. Dean*, District Attorney, (Stephens County), of Breckenridge, *J. R. Black*, District Attorney, (Taylor County), of Abilene, *Otis Miller*, District Attorney, (Jones County), of Anson, and *Spurgeon E. Bell*, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the State penitentiary for a term of five years.

This is the second appeal of this case. The opinion delivered by this court on the first appeal is reported in 139 Tex. Cr. R. 480, 141 S. W. (2d) 354, where the salient facts are set out. The facts proven upon the trial of this case, from which this appeal is prosecuted, do not materially differ from those on the former appeal. Hence we deem it unnecessary to here restate the same.

Appellant has brought forward seven bills of exception, each of which he contends reflects reversible error. His first contention is that the court erred in his charge on the law of self-defense because the instruction to the jury restricted his right of self-defense to real and apparent danger, producing in his mind a reasonable expectation or fear of death or serious bodily injury, and ignored the right to defend himself against a milder or lesser attack. If the evidence had raised such an issue, he would have been entitled to such an instruction. A careful review of the statement of facts leads us to the conclusion that there was not any evidence from any source which authorized or required such a charge. At this time of the homicide, the deceased was not armed. He had no weapon of any kind on his person, and he made no threat to kill the appellant or inflict serious bodily injury upon his person. All that the deceased did was to exchange a few uncomplimentary remarks with the appellant and walk towards him, when appellant shot him at close range with a shotgun, which is per se a deadly weapon. These facts do not reduce the offense to an aggravated assault. Hence an instruction on the defense against a milder attack under Art. 1224, P. C., was not required. See Ballard v. State, 71 Tex. Cr. R. 587; McGrew v. State, 49 S. W. 226; Rojas v. State, 91 S. W. (2d) 370; 129 Tex. Cr. R. 654; Beverly v. State, 134 Tex. Cr. R. 331, 115 S. W. (2d) 652; Lusk v. State, 131 Tex. Cr. R. 503, 100 S. W. (2d) 369.

Appellant cites us to the cases of Taylor v. State, 56 S. W. (2d) 646; Schmidt v. State, 116 S. W. (2d) 388, and Joubert v. State, 111 S. W. (2d) 721, besides some others. We have examined these cases and are of the opinion that they are readily distinguishable on the facts from the instant case. In the Taylor and Joubert cases, the weapons used were not *per se*

*deadly weapons.* In the Schmidt case, the injured party was actually assaulting appellant with soda-water bottles and a glass mug; that when the injured party threw the bottles, Schmidt ducked and then fired. However, the injury inflicted upon Jenkins did not prove fatal. From the facts in evidence in that case, the jury may have believed that the assault on appellant and Cood was unlawful and violent but not of a nature to create in the appellant's mind an apprehension of death or serious bodily injury. Hence that case is not applicable here. See Davis v. State, 117 Tex. Cr. R. 377.

Appellant's next complains because the court declined to instruct the jury that he had a right to protect his property and in doing so he could resort to such means as appeared to him at the time to be reasonably necessary to attain that end. We are not in accord with appellant's contention. The deceased was in possession of the property under a lease and was cultivating the same. At the time the fatal injury was inflicted upon him, he was not injuring any property or attempting to do so. He merely requested appellant to leave the premises and not take the pipe from the well. The record shows that appellant had instituted suit against the deceased and his landlord to recover the property. The question of who had the right of possession was not for the appellant to determine, nor was that question to be adjudicated by the court in the trial of this case. In our opinion, such an instruction as was requested by appellant was not required under the facts of this case.

Appellant cites us to the case of Turner v. State, 87 S. W. (2d) 736, as supporting his contention. It will be noted that in that case the accused was in actual possession of the premises and had been for years. The deceased had entered thereon, was destroying trees and clearing a way for the purpose of setting a fence when the homicide occurred. Such is not the case here. Mr. Cooper, the lessor, had all the land under fence, including that which the appellant claimed, had had it under fence for a number of years, and claimed it under a deed duly recorded. Appellant had not been on the premises for the preceding two years, although he knew that Cooper (who had leased the premises to the deceased) was not only claiming it but was in actual possession thereof, and such he charged to be a fact in his petition of trespass to try title. Appellant had not come to take possession. He merely came to get a pipe from the well. Thus, it will be noted that the facts in the present

case and those in Turner v. State, supra, are not by any means alike.

For this court to hold that even a true owner of land could wilfully kill any one who had entered upon his premises in order to eject him would be tantamount to abrogating the law relative to trespass to try title, the law of forcible entry and detainer and destroy the object of our government to settle the rights of adverse claimants to real estate in an orderly way and to invite murder.

Appellant's next contention is that the court erred in declining to instruct the jury on the law of aggravated assault. Whether such a charge is required depends upon the facts of each particular case. We have heretofore stated the facts leading up to, at the time of and immediately preceding the homicide, and, in our opinion, they fail to raise the issue. See Ballard v. State, 71 Tex. Cr. R. 587; Crenshaw v. State, 48 Tex. Cr. R. 77. The facts, as they transpired at the time of the homicide in the Ballard case, supra, are very similar to those in the instant case, and this court, speaking through Judge Davidson, held that a charge on the law of aggravated assault was not called for by the evidence.

Bill of Exception No. 3 reflects the following occurrence: According to the court's qualification of the bill, the State introduced in evidence the file number of the original petition in the case of Alex Fambro v. Dave Wagley, et al, the date of filing, the property described therein, and the signature of the attorney for plaintiff to the same. The land therein described was known as the "laundry lots" and were the premises over which the trouble originated and ultimately resulted in the killing. It occurs to us that this testimony was admissible as tending to show a motive for the killing. Moreover, appellant on cross-examination of Mr. Cooper, inquired of him if he (appellant) did not claim to own the "laundry lots" in question. The evidence complained of in the bill did no more than show that appellant continued to claim the property from the time of the filing of the suit up to the time of the fatal difficulty. Just how the introduction of the evidence by the State was hurtful to the appellant, in view of the facts developed on cross-examination of Mr. Cooper, is inconceivable to us.

Bill of Exception No. 4 complains of the introduction in evidence by the State of the citation in the case of Alex Fambro v.

Dave Wagley, et al., together with the return thereon showing that the defendants in said suit were served with the citation on the 18th day of October, 1938. This bill fails to disclose just how the introduction of the citation was hurtful to the defendant. He had already testified that he sued Dave Wagley because he had plowed up his lots. He also testified that he filed suit for damages to try the title to the land. Under the circumstances disclosed by the record, we are unable to perceive any prejudicial effect resulting to the appellant from the introduction of the same.

Bill of Exception No. 5 reflects that after the witness R. E. Hood had testified that the defendant's reputation for truth and veracity was good and that he bore a good reputation as a peaceable and law-abiding citizen in the community in which he resided prior to November 16, 1938, the State, on cross-examination of the witness, made inquiry as to whether he had heard about an altercation that appellant had with Ben Hickman about a year or two prior to the killing which resulted in a breach of the peace, to which the witness replied that he had heard of such altercation prior to the killing, that thereupon the State asked the witness the following question:

"Did you hear about such an altercation that he had with Mr. N. A. Richardson, Mr. Boles and with Mr. Craighead?

The witness replied:

"I did not hear anything about one with Mr. N. A. Richardson nor one with Mr. Boles nor one with Mr. Craighead. I did not hear about any of those."

Appellant objected to the question and answer on the ground that same was not admissible, was highly prejudicial, irrelevant and immaterial. We think that this inquiry was permissible. Appellant had put his general reputation as a peaceable, law-abiding citizen in issue and the witness had testified in support of the same. Thereupon the State made the inquiry of him if he had heard of the specific act mentioned for the purpose of testing the sincerity of the witness and the weight to be given to his testimony. See Hart v. State, 141 S. W. (2d) 648, and authorities there cited.

Bill of Exception No. 6 complains of similar questions and is to the same effect as Bill No. 5. For the reasons stated in disposing of that bill, we overrule this bill. The same is true with reference to Bill of Exception No. 7.

By Bill of Exception No. 1 appellant complains of the testimony given by Mrs. Kate Wagley, wife of the deceased, to the effect that some ten or fifteen minutes after the fatal shot had been fired and after she and her father had placed her wounded husband in an automobile and were taking him to the hospital in Breckenridge, he made the following statement to her:

"He (Dave Wagley) said when he first got there that Fambro drew a double-bitted ax on him, and he told him that if he would lay that down, they could settle it without further trouble; and he said he thought Fambro was leaving and he turned around and asked the other boys to leave too. And when he turned around, Fambro was there with the gun and all that he could do was (to) stand there and take it with his hands in the air."

Appellant objected to this statement on the ground that it was hearsay and not res gestae. It was shown that the deceased, at the time of the alleged statement, had received a mortal wound; that he was suffering intensely, bleeding freely and was spitting up blood.

In the case of Nami v. State, 263 S. W. 595, 97 Tex. Cr. R. 522, a statement made by the deceased was admitted as res gestae although it was made anywhere from fifteen minutes to two hours after the shooting. In passing upon the question and holding the evidence admissible as res gestae, the court remarked that the deceased was suffering from a mortal wound and in great pain. The court quoted from the case of Freeman v. State, 239 S. W. 969, 91 Tex. Cr. R. 410, as follows:

" 'Many authorities hold that when a condition of suffering exists from the infliction of the injury to the making of the statement in a given case it might extend far enough to preclude premeditation and in cases of this kind we have declined to be limited to any specific time'." (Citing a number of authorities).

It is true that according to Richardson's testimony, the alleged statement was made, if made at all, some thirty minutes after the fatal injury was inflicted. However, time is not the only element by which to determine whether a statement is res gestae. See Tex. Jur. Vol. 18, p. 299, sec. 183.

This question was before us on the former appeal and was discussed in the original opinion. It was again more fully dealt

with by Judge Hawkins on motion for rehearing. We held then, and hold now, that the testimony was admissible as a part of the res gestae.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant's motion for a rehearing is merely concerned with two propositions urged by him wherein it is claimed we were in error.

The proposition relative to a charge on the defense of property is again urged, and error is claimed because of the court's failure to charge thereon. We adhere to the reasoning set forth hereon in the original opinion, and see no benefit that could come from an elaboration thereof. See Fambro v. State, 139 Texas Cr. R. 480, 141 S. W. (2d) 354.

Again it is insisted that the trial court was in error in failing and refusing to charge on appellant's right to defend against a milder or lesser attack than one threatening death or serious bodily injury, and we are cited to many cases holding that such a charge should have been given. Each of such cases of course have their own peculiar facts, none of which are strikingly similar to those of the present case. The article invoked by appellant is Art. 1224, P. C., and reads as follows:

"Homicide is justifiable also in the protection of the person or property against any other unlawful and violent attack besides those mentioned, and in such cases all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack, and any person interfering in such case in behalf of the party about to be injured is not justified in killing the aggressor unless the life or person of the injured party is in peril by reason of such attack upon his property."

In support of appellant's contention he cites us to the case of Bryant v. State, 100 S. W. 371. The facts therein set forth are very similar to those in this case. The deceased was a large man, drinking, and cursing the accused, and trying to fight with the accused. Bryant was a small man, weak and sickly; the deceased was coming toward Bryant and acting as though he had a pistol in his possession. Bryant shot once in the roof in order to scare the deceased, so he said, and then killed the deceased, who was some ten or twelve feet away and coming towards him. Judge Henderson laid down the doctrine in that case that:

"Article 677 (now art. 1224) authorizes self-defense as against a non-felonious assault, and that is where the attack is of a violent character, and in such case self-defense is only allowable while the person killed is in the very act of making such unlawful and violent attack. As we understand by this, it does not authorize a killing when the party is about to attack, or is doing some act preparatory to the attack, but he must be then making such unlawful and violent attack. We do not believe a party is compelled to wait until a battery has been inflicted on him, but the attack must be then imminent, immediate, and impending; otherwise he is not to slay, and even in such cases all other means must be resorted to except retreating to avoid the killing."

The action of the court in refusing to give that article in charge to the jury in the Bryant case, supra, was held to be correct, and on this point all three judges concurred.

In the Taylor case, 56 S. W. (2d) 647, the killing was done with a knife while Taylor was undergoing a beating by more than one assailant, who were armed only with their hands and fists, and such cutting was done while the actual fighting was going on and a violent attack was in progress at such time. The trial court limited the accused's right of defense to a fear of death or serious bodily injury, and refused to charge upon a lesser and milder attack. It is easily seen where the accused was injured by such a limitation in the court's charge, because of the fact that a mere beating with one's fists would hardly be taken by a jury as threatening death or serious bodily injury.

In the Joubert case, 111 S. W. (2d) 721, the difficulty between the accused and the deceased was carried on by means

of a shovel in the hands of the deceased and a hoe in the hands of Joubert, and again it is evident that the weapon used in the killing was not a deadly weapon per se, and the jury might have reasoned that death would not necessarily nor probably follow by the use of a shovel in the hands of such a person as was the deceased; that the accused had the right to defend against what seemed to them to have been a milder attack than one threatening death or serious bodily injury.

The remaining cited cases, Holland v. State, 39 S. W. (2d) 35, and Jones v. State, 39 S. W. (2d) 76, we do not deem to be in point herein.

Art. 1224, P. C., herein quoted, does not arise as a defense in every case of homicide where a fatal difficulty ensues between the accused and the deceased person. There must first be not only an unlawful but also a violent attack, and the killing must take place while the person killed is in the very act of making such attack. The attack must not only be unlawful but also be violent; not only that, but it must be shown that the person thus attacked had resorted to all other means for the prevention of such injury, save retreat, before he would be justified in taking the life of his adversary. These facts, being affirmative matters of defense, should be shown by proof on the part of the accused, either by some witness or by circumstances, before the necessity of charging the law as laid down by Art. 1224, P. C. arises. In this instant case we do not think the appellant has discharged such a duty. It is shown that he had in his possession or where such were easily accessible, wrenches, tool and other instruments, not deadly weapons per se, which he could have resorted to as a means of defense, and some of which he actually had in his hands, and seemed to have warded off any contemplated attack upon himself until he had possessed himself of his gun, and after the possession of his gun upon his part, he used same only in its deadly character and took the life of an unarmed man, who at best was only trying to put him off a plot of ground, the possession and ownership of which was in litigation at such time.

We adhere to the rulings expressed in our original opinion.

The motion is overruled.