**Bobby Clyde BRADFORD, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 36031

Court of Criminal Appeals of Texas.

Nov. 13, 1963.

Doss Hardin, Fort Worth, for appellant.

Bruce Allen, County Atty., Waxahachie, McGee Parramore, Asst. County Atty., Waxahachie, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for murder with malice; the punishment, death.

The testimony of the State reveals that in response to a radio dispatch about 8:30 p. m. on September 22, Constable Wicker went to Sanders' Place in Ferris where the appellant had shot his pistol three times in the yard while drinking beer, cursing and "raising sand." While shooting the pistol appellant said, " 'God damn it to hell. I am going to kill me somebody before in the morning,' and * * * things wasn't going to happen like it did last year," and then he went inside the house. It was shown that Wicker had arrested the appellant in July 1961, for carrying a pistol which caused him to go to the county farm. The testimony shows that shortly before going to Sanders' Place on the night of the killing the appellant had said, " * * * Mr. Ben (deceased) is not going to arrest me no more." In ten or fifteen minutes after the appellant entered Sanders' Place Constable Wicker entered it also, where he searched several persons, and while he was doing so the appellant started toward the door. At this time Constable Wicker told the appellant to wait and "took him on the shoulder", whereupon the appellant drew his pistol and began shooting Wicker. After appellant began shooting, Wicker

drew his pistol and shot the appellant; thereafter he walked over to the appellant and while taking his gun said, "turn a loose" several times; he then handed his pistol and the appellant's 380 automatic pistol, which was empty, to Bill Moffett.

The radio dispatcher received a call at 8:40 p. m. from Constable Wicker, and he immediately dispatched an ambulance and officers to the scene of the shooting.

Testifying in his own behalf, the appellant stated that he went with three companions from Ferris to Dallas on the day of the shooting. While in Dallas they bought some beer and wine, which they began drinking in the morning and appellant did not remember leaving the beer place in Dallas, nor did he remember what happened during the day; the next thing he recalled it was 2:40 a. m. the next day and he was in Parkland Hospital. Appellant further testified that after regaining consciousness he discovered that he was suffering from a serious head injury, three shots in the hand, and one in the shoulder, and the doctors were telling him that he was going to die. He also testified that he did not remember seeing or having any difficulty with Constable Wicker on September 22; and that he did go to the county farm in 1961.

It is insisted that the trial court erred in the admission of the following statement by Wicker to Max Zilem: " 'Max, I didn't have a chance. He ducked his head and came out at me like a football player, shooting off his gun,' " over appellant's objection that it was made in his absence and was not a part of the res gestae.

This matter arose in the following manner: Max Zilem, Texas Highway Patrolman, while on routine patrol, heard a radio dispatch about 8:30 p. m. concerning a shooting in Ferris. He testified that seven or eight minutes after he heard the above dispatch, he heard a radio dispatch by Constable Wicker stating "I have been shot"; that in approximately seven or eight minutes thereafter, he arrived at the place where Constable Wicker was leaning against a car with several other persons nearby, and that Wicker was about one-fourth of a mile from where he had been shot. Officer Zilem observed blood on his midsection and leg. Zilem asked Wicker to get in his car, which he did, and as Zilem started toward the hospital Wicker said: " 'Max, I didn't have a chance. He ducked his head and came out at me like a football player, shooting off his gun.' "

The physician who examined Wicker at the hospital testified that he was in acute distress and shock, and therefore he was taken directly into the operating room for emergency surgery; that he suffered several penetrating wounds in the abdomen, and that one shot "just blew that portion of the bowel open." The physician also testified that the death of Wicker was caused by gunshot wounds.

■ The facts and circumstances under which the statement here complained of was made, including the time as shown by the evidence after the shooting, that it was not prompted or made in response to inquiry, and that deceased was then suffering from the infliction of a mortal injury, bring the statement within the rule of res gestae. Therefore its admission in evidence was not error. Freeman v. State, 40 Tex.Cr.R. 545, 46 S.W. 641; Stovall v. State, 53 Tex. Cr.R. 30, 108 S.W. 699; Green v. State, 114 Tex.Cr.R. 274, 23 S.W.2d 376; Fambro v. State, 142 Tex.Cr.R. 473, 154 S.W.2d 840; 29 Tex.Jur.2d 223, Sec. 162; 1 Branch 2d, 117, Sec. 105.

■■ Appellant contends that the trial court erred in refusing to grant his motion for a new trial on the ground of newly discovered evidence. This complaint is not presented by a formal bill of exception, hence it is not properly before this Court for review. Art. 760e, Vernon's Ann.C.C. P.; Young v. State, 156 Tex.Cr.R. 454, 243 S.W.2d 587; Calanchi v. State, 169 Tex. Cr.R. 97, 332 S.W.2d 722. The evidence of the appellant and the state have been brought forward in a separate statement

**338**

of facts. Careful consideration thereof shows no abuse of discretion by the trial court in refusing the motion on the ground of newly discovered evidence.

 Appellant also contends that the trial court erred in sending a note into the jury room in response to a question by the jury.

The purported question and answer appear alone on a page in the transcript. They are not in any manner authenticated or presented in the record in any form which would authorize their consideration. It is observed that a similar contention was properly presented and considered in Pennington v. State, Tex.Cr.App., 364 S.W.2d 376. No error was found in that bill of exception.

The evidence is sufficient to support the conviction and no error appearing, the judgment is affirmed.

Opinion approved by the Court.